## Walker *versus* France.

1. A written agreement may be modified, explained, reformed, or altogether set aside by parol evidence of an oral promise or undertaking, material to the subject matter of the contract, made by one of the parties at the time of the execution of the writing, and which induced the other party to put his name to it.

2. A vendor of land who has failed to comply with his part of the contract in some material particular, cannot force his vendee, who has paid a portion of the purchase money, and is in lawful possession of the premises, either to pay the balance of the purchase money or surrender possession of the premises until the vendor, by repayment of what he has received, and a compensation for improvements, if any such there are, has restored the vendee to the position in which he found him at the time of the execution of the contract.

3. In an equitable action of ejectment brought by the vendor, to recover the balance of purchase money due upon a contract, the vendee will be permitted to recoup the damages sustained by reason of the vendor's inability to comply with his contract.

4. Where the capacity of a sawmill, by reason of the deficiency of its water power, is much less than that warranted by the vendor, the rule to measure the damages is to ascertain what would be the value of the earnings of the mill as warranted at the customary rate per thousand feet, after deducting all expenses, and what would be the value of the earnings of the mill, as delivered, at the same rate per thousand feet.

| | |
|---|---|
| 112 | 203 |
| 125 | 279 |
| 112 | 203 |
| 114 | 170 |
| 128 | 356 |
| 112 | 203 |
| 130 | 94 |
| 112 | 203 |
| 141 | 405 |
| 112 | 203 |
| d 19 SC | 476 |
| 112 | 203 |
| 25 SC | 381 |

February 23d, 1886. Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY, STERRETT, GREEN and CLARK, JJ.

ERROR to the Court of Common Pleas of *Wayne county:* Of July Term, 1885, No. 10.

Ejectment brought by George W. Walker for three lots or parcels of land October 30th, 1883, against W. B. France. Plea, not guilty.

The facts of the case, as they appeared on the trial before McCOLLUM, P. J., sufficiently appear in the charge of the court and in the opinion of the Supreme Court.

In the general charge the court instructed the jury, *inter alia:* [Now, in the investigation of this case, the first difficult question for you to determine is what was the actual contract between these parties? Does the writing fully and entirely express that contract, or does it not? In other words, was it a part of the contract and agreement between Walker and France, that Walker guaranteed to France that this mill had a certain capacity for sawing, and that there was 10,000,000 feet of good white hemlock lumber upon this land? Was that a part of the actual agreement between these parties? It is not in the writing, but if it existed, as a fact, it may be put

there by the kind and description of evidence which we have mentioned.]    (Eighth assignment of error.)

[If it was agreed between these parties, as a part of their bargain, that Walker should guarantee the quantity of hemlock lumber upon the land to be 10,000,000 feet, and the water power to be as claimed by the defendant, and by reason of that guaranty France was induced to sign the contract, as written, then that agreement must be treated the same as if it had been written in the contract.   It then becomes a part of the contract.   Because if a party is induced to sign a contract in consideration of a certain promise connected with the subject matter, made by the other party, then a breach of that promise, or a disregard of it, under those circumstances, would constitute a fraud upon him, so as to subject the writing to explanation or qualification, by parol evidence.] (Ninth assignment of error.)

Now, what are the facts in this case, and upon that branch of the case?   The direct evidence upon that subject, on the part of the defendant, is found in the testimony of the defendant himself, and in the testimony of his wife and two sons. They all testify before you that Mr. Walker made this guaranty just before the execution of the contract.   As we understand their testimony, it is that this guaranty was made by Mr. Walker at the house of Mr. France on the morning that the contract was executed.   They say to you, in substance, that Mr. France said to Mr. Walker, when his attention was called to the execution of the contract, that he had been informed, or had learned, that what Mr. Walker had told him about the quantity of timber upon the land and the capacity of the mill was not true.   And that if he had been correctly informed, he should not sign the contract, and that thereupon the conversation which they detail ensued between the parties.   In that conversation, if correctly related by the witnesses, Mr. France declined to execute the articles without the insertion of the guaranty, but upon being told by Walker that it should make no difference, and that it should be the same as if it was in the contract, he finally consented to sign it, and did sign it.

The defendant also claims to find some corroboration of this testimony in regard to the alleged guaranty, in certain declarations which he alleges that Mr. Walker made to one or two persons.   Declarations not directly admitting or conceding any such guaranty, but bearing, as the defendant claims, a construction to some extent corroborative of his claim of such a guaranty.

Opposed to this evidence you have the testimony of Mr. Walker, the plaintiff, and of his brother, S. T. Walker, as to

what occurred upon the lot. Mr. France testifies that while upon the lot there was a talk about the quantity of hemlock timber upon it, and that it was there represented that there were 10,000,000 feet. Mr. Walker and his brother both testify that no such conversation took place, and that no statement of that kind was made by them, or either of them. They admit that there was some talk about the quantity of lumber upon the lot, but, according to their testimony, as we recall it, the highest estimate was made by S. T. Walker, the brother of the plaintiff, who said he thought there were about 5,000,000 feet. Mr. France estimated it at less. G. W. Walker, the plaintiff, denies entirely that he made any guaranty whatever as to the quantity of lumber upon this land, or any guaranty of the water power, or of the mill, or the capacity of either.

They have also given in evidence, on the part of the plaintiff, declarations which they claim to have been made by Mr. France, which they say are corroborative of the claim of Walker, that no such guaranty was made, and inconsistent with the claim of Mr. France that such a guaranty was made. You have also, on the part of the plaintiff, the testimony of Mr. Little, the man who wrote the contract, and who is at present residing in Minnesota. His deposition has been taken and read to you. He testifies in substance, as we remember the evidence, that the parties came to his office and requested him to draw the contract, and stated its terms to him fully, and that he reduced the contract to writing, and that it was subsequently read to the parties, and that they agreed that it contained all of the contract, and that nothing was said on the subject of a guaranty of the capacity of the mill, or the water power connected with it, or the quantity of timber upon the tract.

We do not recollect, however, that Mr. France claims in his testimony that anything was said about this guaranty when they were at Mr. Little's office. We do not recollect distinctly how that was, but you will recall all the evidence in the case bearing upon this question. Now, the evidence to which we have referred, on the part of the defendant, and on the part of the plaintiff, is the material evidence in the case, by the aid and assistance of which you must determine this question: Was there, or was there not, this parol guaranty made by Mr. Walker, on the faith of which Mr. France signed this contract?

If you settle that question adverse to the defendant—that is, if you fail to find from the evidence the existence of this alleged guaranty, then that is the end of the defence in this case. If, however, your finding upon this question should be

[Walker *v.* France.]

adverse to the plaintiff—that is, if you should find that this guaranty was made, as claimed by Mr. France, and that he executed this contract upon the faith of it, then, as before said, that guaranty became a part of the contract, and as operative in this case as if it had been written there, and you will proceed to the consideration of the remaining branch of the case: Was there a breach of that guaranty, either with respect to the quantity of timber upon the land, or with respect to the capacity of the mill, and the water power connected with it?

[If you find, under our instructions, the existence of such a guaranty, as claimed by the defendant, and also find that there was a breach of such guaranty, then the plaintiff must allow the defendant whatever damages he has sustained by reason of the breach of such guaranty. To illustrate; if there was a guaranty that there was 10,000,000 feet of hemlock lumber upon the land, and in fact there was but 1,000,000, or 3,000,000, then the defendant would be entitled, by way of equitable defence to this action, to abate from the purchase money which he had agreed to pay, the value of such deficiency. That is, if there was a guaranty of 10,000,-000 feet, and in fact there were but 3,000,000 feet upon the lot, then the deficiency would be 7,000,000, and the value of that 7,000,000 feet the defendant would be entitled to have deducted from the price which he agreed to pay.] (Tenth assignment of error.)

[Next, as to the mill and water power. If it was guaranteed to have a certain capacity, had it less capacity than it was guaranteed to have, and if so, how much less? How would the value of the property be affected by this deficiency in the capacity of the mill, if it existed, and what would be the damage to the defendant, by reason thereof? We stated, in our answer to one of the plaintiff's points, that we thought perhaps there was some basis in this case upon which the jury might adjust the damages for any deficiency in the capacity of the mill or water power, if there was any such deficiency. That evidence is this. There is evidence in the case to the effect that the value of the mill, and the water privilege used in connection with it, was $1 per thousand for the lumber it would saw. For instance, if the mill would saw 10,000 feet per day, then, according to that, the value of its use would be $10. But we think, however, although it was not mentioned by the witnesses, that from that would have to be taken into consideration the wear and tear of the mill, and the expenses of maintaining it. But a mill which had the capacity to cut 10,000 feet a day, would certainly be more valuable than one which had the capacity to cut only 5,000.] (Eleventh assignment of error.)

[Walker v. France.]

We mention this only by way of illustration, and as a circumstance which may afford the jury some assistance in measuring damages upon this branch of the case, should they have occasion to do so.

It has been shown in this case that Mr. France, the defendant, has taken the legal title to this lot, and that he took it subsequently to making his contract with Walker, and that he paid the balance which was due from Walker to Morse, which was $729. In any event he would be entitled to have that amount credited upon the purchase price of the land. It is conceded that this sum of $729 should be abated from any sum which you may find to be due to Mr. Walker upon this contract.

[Now, supposing that you should find that there was such a guaranty as is alleged by the defendant, and that there was a deficiency or breach of that guaranty, how are you to ascertain the value of the hemlock timber standing upon that lot? We have some evidence in the case bearing upon the question of the value of hemlock lumber in the tree, and our recollection is that that evidence runs from 25 cents a thousand to $1.25 or $1.50 a thousand. From this evidence the jury will have to ascertain, as best they can, the value of hemlock lumber in the tree standing upon the land at that time, and, if you find the existence of such a parol guaranty, deduct the value of the deficiency, if any existed, from what would otherwise have been due to Mr. Walker upon this contract. And also the damages arising to Mr. France from the deficiency in the capacity of the mill and water power, if you find such guaranty and deficiency to have existed.] (Twelfth assignment of error.)

Verdict for the defendant and judgment thereon, whereupon the plaintiff took this writ assigning for error, inter alia, those portions of the general charge included within brackets.

W. W. Watson, H. M. Hannah (Charles Hawley and E. C. Mumford with them), for plaintiff in error.—1. In order to render admissible parol evidence to vary the terms of a written agreement on the ground of fraud in its procurement there must be evidence of fraud other than that which may be derived from the mere difference in the parol and written terms. The mere breach of a verbal agreement made at the time of signing a written contract whereby one party promises the other to perform certain stipulations not provided for in the writing, is not such fraud as will let in evidence to control the written agreement: Thorne, McFarlane & Co. v. Warfflein, 4 Out., 519; Fulton v. Hood, 10 Casey, 365.

2. The court should have directed the jury to ascertain

what part of the value of the whole, at the time of the purchase, was represented by the deficiency, whether one fourth, one third, one half, or any other portion which might be shown by the testimony.   Then they should have been instructed to deduct from the whole purchase money a corresponding portion, one fourth, one third, one half, or such other fraction as they might find from the testimony :   Beaupland *v.* McKeen, 4 Casey, 124 ; Morris *v.* Phelps, 5 Johnson, N. Y., 49 ; Cornell *v.* Jackson, 3 Cushing, Mass., 506 ; Mitchell *v.* Mills, 17 Ohio, 601 ; Sedgwick on Damages, pp. 182–3.

3. The court should have instructed the jury to ascertain from the testimony, if they could, the value of the whole property with a mill on it of the capacity alleged in the guaranty ; then find the whole value of the property with the mill actually there.   The difference would have represented the deficiency, then reduce the whole amount of purchase money to be received by Walker for the property in the same proportion as the actual value of the whole falls below the guaranteed value.   The rule so laid down and applied would compel the vendee to pay for what he actually received and no more, and would compensate the vendor for what he actually delivered, and no more.

*P. P. Smith* and *G. G. Waller*, for defendant in error.— 1. The attempt to bring this case within the ruling in Thorne *v.* Warfflein, 4 Out., 519, cannot succeed.   They are essentially different.   1. In that case the fact relied on to affect the written agreement was a promise to do a thing entirely independent of the terms of the writing, and was no part of the contract of sale.   In this case the parol agreement related directly to the subject matter of the writing, and formed a material part of the contract between the parties.   2. In Thorne *v.* Warfflein there was no misrepresentation as to any of the subject matter of the contract, simply a promise ; while in this case there was positive misrepresentation—guaranteed to be true.   3. In that case there was no request that the parol agreement be put in the writing ; in this case plaintiff was repeatedly asked to do so.   4. There the parol agreement was not made a part of the contract of sale.   Here it was so expressly stipulated, and if it failed the exchange was to be rescinded.   5. In Thorne *v.* Warfflein the plaintiff does not even claim to have been inveigled into signing the writing by means of the promise, while here it is conceded that France said he would not have executed the papers were it not for the parol agreement and guaranty.   6. In that case there was no attempt to use the writing in violation of any parol agreement

[Walker v. France.]

upon the faith of which it was signed. Here there was such an attempt, which in itself amounted to a fraud.

2. The court told the jury that they should find the value of hemlock in the tree standing on the land at the time, and to deduct the value of the deficiency from what would otherwise have been due to Walker on the contract, thus ignoring all questions of fraud and allowing compensatory damages only. Certainly under the facts in the case as found by the jury, the plaintiff ought not to complain of this instruction. The value of the timber at the place and time of sale was the true measure of damages: Herdic v. Young, 5 P. F. S., 176; Young v. Lloyd, 15 P. F. S., 199; Coxe v. England, 15 P. F. S., 212.

3. As in common speech the word guaranty and warranty are used as synonymous terms, the parties to this suit have also used the word guaranty as descriptive of the parol contract which in law constitutes an express warranty. Of course we regard it as an express warranty rather than a guaranty, technically so called. If a vendor actually consents to be bound for the truth of his representation, no matter what the form of words used, he becomes a warrantor, and creates the contract of warranty: McFarland v. Newman, 9 Watts, 60; Weimer v. Clement, 1 Wright, 149; Warren v. Phil. Coal Co., 2 Norris, 437.

Mr. Justice GORDON delivered the opinion of the court, March 29th, 1886.

This was an action of ejectment brought by G. W. Walker, the plaintiff below, against W. B. France, to enforce payment of the balance of purchase money alleged to be due him on articles of agreement executed by the said parties on the 20th of April, 1876, by the terms of which Walker, in consideration of the sum of $6,000, which he acknowledged to have received in hand, and 1,500,000 feet of hemlock lumber to be thereafter delivered, agreed to sell to France some 565 acres of land, and also certain personal property, as therein set forth and described. France took possession of the premises but paid nothing beyond the hand money, except some $729, which were due to Morss, the owner of the legal title. What the plaintiff sought to recover by his action in the court below was the value of the aforementioned manufactured lumber, estimated to be worth, at the place of delivery, $12,000.

Were we confined to the terms of the written contract as executed by the parties, the case would be of easy solution, for, although the evidence reveals the fact that France made a very bad bargain, yet having made it with his eyes open he would have to abide by it. But he alleged, and what was

2 AMERMAN—14

more to the purpose proved, on the trial of the case, to the satisfaction of the jury, that the written contract did not embrace the entire agreement of the parties, and that he was induced to sign it under the false representations of the plaintiff, accompanied with his solemn guaranty, that there was on the property 10,000,000 feet of hemlock lumber, and that the saw mill, which formed part of the premises, had power, and was in condition, to cut at least 2000 feet of boards on any day of the entire year, and 1000 feet for every hour of the 24 when the upper mill owner did not withhold the water. Now, as it was admitted that there were not over 3,000,000 of hemlock on this tract, and as it was proved that from dilapidation and want of power the mill could not perform what it was warranted to do, it is clear that the defendant could set up this warranty, though in parol, as a defence to the plaintiff's claim. Of these representations and warranty the testimony was clear, positive and abundant, so that the question turned principally on the credibility of the witnesses, and was one, of course, for the jury. So far as the court was concerned it was limited to a proper and formal submission of the evidence, and instructions as to the proper measure of damages. In these particulars the learned counsel for the plaintiff has failed to convict the court of error. That a written agreement may be modified, explained, reformed, or altogether set aside by parol evidence of an oral promise or undertaking material to the subject matter of the contract, made by one of the parties at the time of the execution of the writing, and which induced the other party to put his name to it, must now be regarded as a principle of law so well settled as to preclude discussion. All those assignments of error, therefore, which involve the court's rulings on the principle here stated, or on the evidence admitted to prove the plaintiff's representations as to the condition of the property and quantity of timber upon it, as well as on the testimony admitted to show that these representations were in fact not true, must be dismissed as having in them nothing which we can sustain. This leaves for our further consideration only the 11th and 12th assignments, which embrace the rulings of the court on the question of the damages to which the defendant was entitled by way of recoupment. In considering the proposition raised by these assignments, we are not to forget that the plaintiff's action is an equitable one, and that his right to recover depends upon the fact that he has substantially performed his part of the contract. His vendee cannot be compelled to pay for that which he cannot give him, neither can he dispossess the defendant until he has refunded the purchase money which he received, and compensates him for his improvements: Richardson *v.*

Kuhn, 6 Watts, 299. In the case in hand, France stands on the defensive only; he may defeat Walker, but can recover against him nothing but costs. To this end the defendant had but to show that the plaintiff failed to comply with his part of the contract in some material particular. For, having paid part of the purchase money, and being in lawful possession of the premises, the plaintiff, on a partial performance on his part, could neither force his vendee to pay the balance of the purchase money, nor, as an alternative, compel him to turn out until by re-payment of what he had received, and a compensation for improvements, if any such there were, he had restored that vendee to the position in which he found him at the time of the execution of the contract. When the matter in hand is looked at in this light, the plaintiff certainly has no ground of complaint as to the instructions of the court, for it held the defendant to a proof of damages equivalent to the whole balance of the purchase money. The defendant showed the payment of $6,000; that there was a warranty of 10,000,000 of hemlock lumber, and that the mill had power to cut not less than 2000 feet of boards on any and every day in the year, whilst the facts proved were that there were not more than 3,000,000 feet of hemlock lumber on the tract, and that there were some five or six months in the year when the mill could not be run at all for the want of power. Here, then, was enough of itself to defeat the plaintiff's action; an agreement to convey 10,000,000 of hemlock lumber, and an offer to perform on conveyance of 3,000,000. Surely this will not do; he cannot thus compel the defendant to a performance of the contract when, in so material a particular, he admits his own inability to perform his part of it. But as a mere matter of recoupment we cannot see how the court could have submitted a better rule for the ascertainment of damages. The principal value of the property was in its timber. Undoubtedly, if we have regard to the weight of evidence, the hand money fully covered the value of the land as the defendant received it, and so the jury must have found, for the question, as the court put it, was whether or not anything was due the plaintiff, allowing no certified balance to be found for the defendant. Now, the manner proposed for the solution of this question was direct and simple : what was the difference between the value of 3,000,000 feet of hemlock lumber and 10,000,000, and this difference found, was it enough to cover the balance of the purchase money? So with the mill; assuming that its capacity was materially less than that warranted, what was the difference, and how was this difference to be reduced to a money value? It was not so situated that it could be rented as a custom mill; it could not be made

to fill the warranty by repair or reconstruction, for. the principal defect was in the deficiency of its water power. These means of estimation · could not, therefore, be resorted to'; hence, the court and jury had but one method to which they could'have recourse, and that was to ascertain from the evidence what was the customary value of the earnings of such a mill per thousand, after deducting all expenses, and so, by comparison, arrive at the difference of the value of the mill as warranted, and as it was when delivered to the defendant. This was the method adopted by the court, and as we have discovered none better, we can do no less than give it our approval.

The judgment is affirmed.