## SIDNEY SCH. FURNITURE CO. v. WARSAW SCH. DISTRICT.

APPEAL BY DEFENDANT FROM THE COURT OF COMMON
PLEAS OF JEFFERSON COUNTY.

Argued October 8, 1889—Decided November 4, 1889.
[To be reported.]

1. Every point for instructions submitted to the court upon a trial, should be reasonably consistent with the evidence, and so comprehensively framed that the deduction therein drawn is the logical, legal conclusion from the facts assumed, notwithstanding the force of the other evidence in the cause.

2. Each point submitted is to be treated as a distinct, independent proposition; and, in passing upon the correctness of the answer to it, a court of error cannot assume any fact not embraced, expressly or by necessary implication, in the hypothesis set forth in the point as drawn.

3. If a point is based upon an hypothesis not sufficiently comprehensive, it may be absolutely negatived, or it may be affirmed with a qualification; but if the latter, it is the duty of the court to state all the qualifications to which an absolute affirmation is necessarily subject.

(a) In an action for the price of furniture which was to be paid for on delivery and which the defendant refused to accept, the plaintiff prayed instructions that he was entitled to recover upon a certain hypothesis, which, as it was stated, did not include the assumption that he had complied with his agreement by delivering the kind of furniture contracted for.

4. The affirmance of such a point, without adding any qualification as to the necessity of substantial compliance with the contract by the plaintiff, was erroneous, and the error was not cured by instructing the jury, in answer to the defendant's points, that the defendant was not bound to accept furniture not in accordance with the contract.

5. When one agrees to make and deliver an article to the satisfaction of another, the latter, acting in good faith and not from mere caprice, may refuse to receive it if for any reason really not satisfactory to him; but a refusal to accept, made without an actual bona fide inspection of the article or an opportunity to judge of its merits, is not within this rule.

6. A written contract may be varied, reformed or set aside by clear, precise, and indubitable evidence of a contemporaneous oral agreement as to a material subject-matter, by which one of the parties was induced to sign the writing, and it is not proper in such a case to charge that the party is estopped, by accepting the writing, from setting up any other agreement than that mentioned therein.

Before PAXSON, C. J., STERRETT, GREEN, CLARK, WIL-LIAMS, MCCOLLUM and MITCHELL, JJ.

No. 90 October Term 1889, Sup. Ct.; court below, No. 403 September Term 1885, C. P.

On September 1, 1885, the Sidney School Furniture Company of Sidney, Ohio, brought assumpsit against the School District of Warsaw township, to recover upon a contract for the sale and delivery of school furniture. The defendant's pleas were non-assumpsit, payment with leave, etc.

At the trial on February 9, 1886, there was a verdict for the defendant. The judgment entered thereon was reversed, with a venire de novo, upon a writ of error to No. 135 October Term 1886: Sidney School Furn. Co. v. Warsaw Sch. D., 5 Cent. R. 306.

At the second trial on May 17, 1887, a judgment of compulsory nonsuit was entered, which, upon a writ of error to No. 7 October Term 1888, was reversed with a venire de novo: Sidney School Furn. Co. v. Warsaw Sch. D., 122 Pa. 494.

At the third trial, February 12, 1889, the following facts were shown:

On July 25, 1885, the school board of Warsaw township held a meeting to receive proposals for furnishing eleven school houses in said township with new desks. Agents representing several companies were present with sample desks. Among these agents was H. M. Sweet, agent of the plaintiff. The board finally announced that no contract would be made that day, and the agents then left. Sweet afterwards returned and resumed negotiations, which finally resulted in the adoption by the board of the following resolution, duly entered on the minutes: "Motion by William Bullers to accept proposition of Mr. Sweet to furnish eleven school-houses with new fashion desks, at three dollars and fifty cents per seat; two houses to be paid for at once, and the balance in three yearly payments. Motion seconded by Pantall. Voting in the affirmative, Bullers, Hilliard, Rickard and Temple. Voting no, Love."

In accordance with the above resolution the following contract was then executed:

"This contract made the 25th day of July, 1885, between the Sidney School Furniture Company, John Loughlin, sole pro-

Statement of Facts.

prietor, of Sidney, Ohio, and the board of directors of school district in Warsaw township, of Jefferson county, State of Pennsylvania, shows: That said Sidney School Furniture Company agrees to deliver on cars at the factory, in knock down form, the following described school furniture, etc., to be shipped on or about August 10th, 1885, to Mr. S. W. Temple, Brockwayville station, on Rochester and Clearfield railroad, in Jefferson county, State of Pennsylvania, his P. O. being Warsaw, in Jefferson County, Pennsylvania.

"66 No. 1 double desks; 66 No. 2 double desks; 66 No. 3 double desks; 66 No. 4 double desks; 22 No. 1 double rears; 22 No. 3 double rears. Grand total, $985.81. That the undersigned school officers, who are authorized to buy, agree to receive the above named furniture, etc., at the station above named, and pay for the same on arrival the sum of $985.81, in school orders or bonds bearing 6 per cent interest from October 1st, 1885, until paid for, and to be due on the following dates: $196.80 October 1st, 1885; $277.36 October 1st, 1886; $262.50 October 1st, 1887; $249.15 October 1st, 1888.

(Signed)                    G. H. HILLIARD, President.

S. W. TEMPLE, Secretary,

School Directors or Committee.

"For and in consideration of the above agreement we guarantee that the furniture shall be made of seasoned material and give good satisfaction. If any castings are broken in shipping we agree to supply duplicates and make no charge for them. Ink wells for the four largest sizes of desks, and all necessary screws will be furnished. Directions for putting the desks together will be sent when they are shipped.

"Special notice: All bills must be settled with us. No agent is allowed to receive payment or settle any bills unless he can show written authority from us.

Sidney School Furniture Company,

John Loughlin, Sole Proprietor,)

By H. M. SWEET, Agent."

The defendants alleged that the adoption of the resolution and the execution of the contract were induced by Sweet by means of a contemporaneous parol agreement. In support of this allegation several members of the school board testified, in substance, that in the negotiations prior to the signing of the

contract it was mentioned that in the Coder school-house, a few miles distant, and also at DuBois, in Clearfield county, there was furniture manufactured by the plaintiff, which the board desired to examine before closing a contract of purchase; that Sweet represented that he would not be able to attend another meeting of the board and urged that a contract be. closed at once, agreeing that the board might examine the furniture in the Coder and DuBois school-houses, and if they found it to be of the plaintiff's manufacture and not first class, they should not be bound to accept the desks he proposed to sell them, provided that any defects found in the furniture they might examine, were in the furniture itself and not due to defective setting up, and that it should be taken into consideration that the Coder furniture was manufactured prior to the adoption of certain improvements which would appear in the furniture he desired them to buy; that he further agreed that the desks he was selling should in every respect be equal to the sample he had exhibited, and if when received they were found not to be so, the board need not keep them. Sweet, testifying for the plaintiff denied that there was any agreement outside of the written contract, or that there was anything said at the execution of the contract about its being rescinded. He testified further that the proposal as to visiting other school districts in order to inspect furniture manufactured by the plaintiff, was limited to the following Monday, when the witness was to furnish the transportation for this purpose, at his own expense, but that the board did not accept this proposition.

The contract was made on a Saturday. On the succeeding Monday and Tuesday several of the directors went to the Coder school-house and examined the furniture there. They were not satisfied with it, and on Tuesday evening, July 28, 1885, G. H. Hilliard, president of the school board, telegraphed to the plaintiff: " Take no action on our order until further instructions." To this telegram the plaintiff responded in the following letter dated July 30th, and directed to S. W. Temple: " Dear Sir:—Your order for school furniture has been received through our Mr. Sweet. The goods are ready for shipment and will be shipped promptly on time. Please have the kindness to explain telegram, and oblige."

The secretary of the board, S. W. Temple, subsequently

Statement of Facts.

went to DuBois and examined the furniture there, with which he was not satisfied. On August 7th, the school board reconvened, received the reports of the members who had examined the furniture in the Coder and DuBois school-houses, and thereupon passed a resolution rescinding the contract with the plaintiff. Pursuant to this resolution, on August 8th, a telegram was sent by the president and secretary of the board to the plaintiff, as follows: "Owing to misrepresentations by your agent, H. M. Sweet, we hereby annul our contract and notify you not to ship the furniture, as it will not be received." To this telegram a reply was made by letter dated August 8th, which was as follows: " GENTLEMEN:—We are in receipt of your message of even date, from Brookville, Pennsylvania, notifying us not to ship your bill of goods and stating that you would not receive them. Our agent made no misrepresentations to you whatever. We have a valid contract with you, the terms of which we propose shall be filled to the letter by both parties thereto. We inclose you herewith bill of lading of goods shipped you on 6th inst. as per contract. These goods will be found to be exactly as represented, and we shall expect you to receive and pay for them as per agreement. We are a responsible firm and when we pay a reliable man a good salary and expenses to go and take a valid contract, as in your case, we do not propose to be trifled with in this manner. The prices to you were low and the goods will be exactly as our agent represented."

The woodwork arrived at the railroad station in Brockwayville on August 16th. The irons came two or three days later. Both were consigned to S. W. Temple, as provided in the written contract. On August 26th, Sweet called upon Temple and demanded a settlement for the furniture. He was informed by Temple that the latter had received notice that the furniture was at the Brockwayville station, but that it would not be received or paid for, as the board had rescinded the contract. At that time the furniture at the station had not been examined or seen by Temple or by any one representing the defendant, and the refusal to accept it was based entirely upon the action taken by the board after the examination of the Coder and DuBois furniture. Subsequently, however, Temple and others examined the furniture at the station, and

Charge of Court below.

upon the trial they testified that it was defective in material and workmanship, and did not conform to the sample exhibited to the board by Sweet or to his representations.   The plaintiff called witnesses whose testimony tended to rebut that adduced for the defendant upon this subject; and quite an amount of testimony was taken, upon each side, as to the character of the furniture in the school houses at Coder and Dubois.

At the conclusion of the testimony, the court, WILSON, P. J., charged the jury in part as follows:

If the jury believe from the evidence that the school district of Warsaw township executed the contract in evidence before you, then the covenants on its part therein contained will be binding upon it, unless you further believe from the evidence that the defendant school district was induced to sign the same by some falsehood and fraud practiced on it by the agent of the plaintiff, and such fraud must not be presumed by the jury without proof, and it must be proved by a preponderance of the evidence.   The jury are further instructed that to rescind a contract on the ground of fraud, notice of such intention must be promptly given, and as soon as it can reasonably be done after discovering the facts which entitle it to be rescinded, or else be held to have ratified the contract.   In this case, whether the defendant gave the plaintiff notice of its intention to rescind the contract in question, and whether such notice was given as soon as it could reasonably be done after the alleged detection of the facts relied upon as giving the right to rescind, are questions of fact to be determined by you from the evidence in the case.

\*    \*    \*    \*    \*    \*    \*    \*

Plaintiff's counsel have requested the court to charge the jury:

1. That under the provisions of the fourteenth section of the act of May 8, 1854, P. L. 619, it is made the duty of the secretary of defendant corporation to keep full minutes of all the proceedings of the board in a book for that purpose.

Answer: Affirmed.

2. That all business transacted by the defendant corporation must be at a meeting of its board of directors duly convened and by a legal vote thereof, and all proceedings and business must be recorded on the minutes, and when so recorded the record so

made is the best and only evidence of the action of defendant company.

Answer: Affirmed, except as to the word "only evidence." It is not the only evidence in cases where fraud is alleged or involved.

3. That if the jury find from the evidence that the minute book of defendant corporation contains a record of the meeting of the board of directors of defendant corporation, held on July 25, 1885, authorizing the purchase from plaintiff of desks to seat eleven school-houses, specifying the price and terms of purchase, and subsequently thereto and on the same day executed and signed by the president, G. H. Hilliard, and secretary, S. W. Temple, agreeing to purchase the said desks from plaintiff on the terms and conditions as expressed in the resolution, said agreement would thereby become a binding and valid contract of sale and purchase between the plaintiff and defendant corporation.

Answer: Affirmed.

4. That by the terms of the agreement the plaintiff agreed to deliver on board the cars at Sidney, Ohio, consigned to S. W. Temple, at Brockwayville, Jefferson county, Pa., the desks mentioned in the contract offered in evidence in this case, and if the jury find from the evidence that plaintiff did deliver the desks in accordance with the contract on board the cars at Sidney, Ohio, consigned to said S. W. Temple, that would be a delivery in law and the title was vested, as well as the possession of the desks, in defendant corporation.

Answer: Affirmed, unless the jury further believe from the evidence the facts contained in the defendant's first, second and third points, hereafter to be read.[1]

5. That if the jury find from the evidence that S. W. Temple, the secretary of defendant corporation and consignee, admitted to H. M. Sweet, the agent of plaintiff, that the desks had arrived at Brockwayville, as directed in the contract in evidence in this case, and that a demand was made of him for settlement, and that said Temple, on behalf of the board, refused to accept the desks or pay as provided by the contract, that would be a breach of the contract, and plaintiff can maintain this action to recover the amount so agreed to be paid, with interest.

Answer: Affirmed, unless the jury further believe from the

evidence the facts contained or recited in defendant's first, second and third points.[2]

6. That if the jury find from the evidence that the agreement of purchase, offered in evidence in this case, was read over in the presence and hearing of the board of directors of defendant corporation before signing, and was understood by them, and no objection was made by any one thereto as it was so read and signed, then said agreement is to be taken as the agreement between plaintiff and defendant corporation, and the verdict of the jury should be for the amount so agreed to be paid, in favor of the plaintiff.

Answer: Affirmed, unless the jury further find from all the evidence in the case the facts as contained in defendant's first, second and third points.[3]

7. That to alter, contradict or vary a written agreement by parol evidence, two classes of cases have been established in this state : First, when there has been fraud, accident or mistake in the creation of the instrument itself ; and, second, where there has been an attempt to make a fraudulent use of the instrument in violation of a promise or agreement made at the time the instrument was signed, and without which it would not have been executed.

Answer: Affirmed.

8. That in order to set aside or contradict a written agreement, the evidence must be clear, precise, and indubitable, and of what took place at the execution of the instrument.

Answer: Affirmed.[6]

9. That a condition is to be distinguished from a representation in this : Where there is a condition, there is no absolute agreement finally concluded ; while a false representation, provided it goes not to identity but to quality, is a final agreement. The non-performance of the condition prevents the contract from taking effect ; the falsity of the representation or warranty does not prevent the contract from taking effect, but subjects the vendor to a suit for damages.

Answer: Affirmed.

10. If the jury find from the evidence that the representations of H. M. Sweet, the plaintiff's agent, made before signing the contract in evidence, to the board of directors of defendant corporation, on July 25, 1885, went alone to the quality of the

Charge of Court below.

desks he was selling, that would not amount to a condition nor prevent the contract from taking effect. The remedy of defendant was to defalk or set off the damages against the price agreed to be paid.

Answer: Refused.

11. That if the jury find from the evidence that the agent of plaintiff agreed with defendant corporation, at the time of executing the written agreement, by a parol agreement, and without which parol agreement the writing would not have been made, that the directors of defendant corporation should or might visit the Coder and DuBois school-houses, where Sidney school furniture was in use, and examine it, and if found defective, which defects were not remedied by the improvements made in the furniture he, Sweet, was selling, that then defendant might refuse to take the furniture; then it was the duty of the directors to make such examination, and, after examining the desks in the Coder and DuBois school-houses, or either, and then upon examination of the furniture sold by Sweet to them, the defects were not found to be remedied, then defendant would have the right to rescind the contract and tender a return of the goods.

Answer: Affirmed.

12. That if the jury find the facts stated in the eleventh point as stated therein, and they further find that defendant corporation, through its authorized agent, refused to accept said desks under the contract, without having made the examination as required by the agreement, and before such examination could be made, then the defendant corporation has not complied with the terms of said alleged parol agreement, having refused to comply before the full measure upon which they were to act having been available; that would be a breach of the contract, and plaintiff is entitled to maintain this action, and the verdict of the jury should be for plaintiff for the full amount agreed to be paid, with interest.

Answer: Affirmed.

13. That under the evidence in this case there are but two questions of fact for the jury to find, namely: First, was there a parol agreement made at the time of executing the written agreement between the plaintiff and defendant, and without that parol agreement having been made, the written agreement,

given in evidence in this case, would not have been made; second, if such parol agreement was so made, did the defendant refuse to comply with the written agreement of purchase before the full measure or standard by which their discretion was to be exercised was had; that would be a breach of the contract, and the verdict of the jury should be for the plaintiff for the amount so agreed to be paid, with interest.

Answer: Affirmed.[4]

14. That the evidence on the part of the defendant corporation in this action is not so clear, full, precise and indubitable as is required to set aside or alter the written agreement offered in evidence in this case, and the verdict of the jury should be for the plaintiff for the amount agreed to be paid.

Answer: Refused.

15. That the defendant corporation having accepted a written guaranty from the plaintiff, it is estopped from setting up any parol or other guaranty except that mentioned in the contract.

Answer: Affirmed.[5]

16. That all statements, agreements and representations made prior to and leading up to the making of a written contract are by law merged in the writing, or presumed to have been abandoned by the parties.

Answer: This is true, as a general rule; it is affirmed.

17. The court is requested to instruct the jury to disregard all parol evidence relating to what took place at the meeting of the board of directors of defendant corporation on July 25, 1885, made and had prior to the action of the board authorizing the purchase of the furniture in dispute and before the written agreement was made.

Answer: Refused.

18. That under all the evidence in this case the verdict of the jury should be for the plaintiff for the amount agreed to be paid under the contract, with interest.

Answer: Refused.

The defendant's counsel request the court to charge the jury:

1. If the jury believe from the evidence, that plaintiff's agent, H. M. Sweet, at the time of making the contract for the furniture, as an inducement to obtain the contract, referred the defendant to furniture in the DuBois and Coder school-houses,

Charge of Court below.

or either of them, as specimens of the manufacture of the firm he represented, and agreed if upon examination of the furniture there found, it was unsatisfactory, they need not accept the furniture ordered; and if the contract was executed by the defendant on the faith of such verbal agreement, and defendant promptly made the examination and found the furniture unsatisfactory, and notified the plaintiff within a reasonable time thereafter not to ship it, they were not bound to receive it, and if the jury so find, their verdict should be for the defendant.

Answer: Affirmed.

2. If Sweet, the plaintiff's agent, made false and fraudulent representations of a material character to obtain the contract, by which defendant was induced to make the contract, and as soon as defendant found such representations to be false, they annulled the contract, and so notified the plaintiff within a reasonable time, it was released; and if the jury so find, their verdict should be for the defendant.

Answer: Affirmed.

3. If the jury believe from the evidence, that as an inducement to obtain the contract in suit, the plaintiff's agent, Sweet, exhibited a sample desk to the school board, and agreed that if the furniture to be shipped in pursuance of said contract, should not be equal in all respects to the said sample, the defendant need not accept the same, and that the contract was entered into on the faith of such representations and agreement, such verbal agreement would be binding on the plaintiff; and if the furniture shipped was not substantially equal in all respects to the said sample, and the defendant refused to accept or pay for the same, and the plaintiff had reasonable notice of such refusal, their verdict should be for the defendant.

Answer: Affirmed.

4. If the furniture at Brockwayville was not substantially up to the guaranty contained in the contract, and was not satisfactory to the defendant, the verdict of the jury should be for the defendant.

Answer: Affirmed.

5. That by the contract the school board were made the exclusive judges of whether the furniture when examined gave good satisfaction or not.

Answer: Affirmed.

6. If the jury find from the evidence that only part of the furniture shipped, was in accordance with the contract and that the rest was inferior, the defendant was not bound to accept any of it.

Answer: Affirmed.

The jury rendered a verdict for the plaintiff for $1,185.43. Judgment having been entered on the verdict, the defendant took this appeal, assigning for error:

1–6. The answers to the plaintiff's points.[1 to 6]

*Mr. B. J. Reid* (with him *Mr. E. H. Clark* and *Mr. A. B. Reid*), for the appellant:

While the defendant's six points were all affirmed, we submit that we were deprived of the benefit of their affirmance by the answers to several of the plaintiff's points, which are contradictory to ours.

1. The words "in accordance with the contract," in the plaintiff's fourth point obviously refer only to the delivery on board cars at Sidney, Ohio, consigned to S. W. Temple, and have no reference to the quality of the desks. But whether this be the true reading or not, the point should have been refused unconditionally; for, while the written contract speaks of delivery on the cars, it also says the furniture is to be paid for on arrival and shall be made of seasoned material and give good satisfaction. In such case the obligation to accept or reject arises only upon actual delivery, not upon the delivery to the carrier; the buyer is entitled to a fair opportunity to inspect, before the title passes and he can be sued for the price, and the goods must correspond with the contract: Dailey v. Green, 15 Pa. 126; Fogel v. Brubaker, 122 Pa. 15; Benj. on Sales, §§ 533, 918, 983, 1049; Barton v. Kane, 17 Wis. 38 (84 Am. Dec. 728). But even if a qualified affirmance of the point was right, the court should not have required the jury to find the facts stated in all of our first three points, in order to negative the plaintiff's point; the facts stated in any one of them would be sufficient. Either the fourth or the sixth of our points, if found true, would have negatived the plaintiff's fourth point.

Arguments.

2. The plaintiff's fifth point contained not a syllable about the desks being of such material and workmanship as the defendant was bound to accept. It should have been flatly negatived, or if affirmed with a qualification, the qualification should have embraced our fourth and sixth points, referring to all our points in the disjunctive. Plaintiff's sixth point was, if possible, still worse. It contained not a word about delivery anywhere, or about the desks being such as the defendant was bound to accept. Its effect was to instruct the jury that if the school board agreed to pay $985.51 for desks of a certain kind, they must pay it whether they got the desks or not. The thirteenth point of the plaintiff has the same vice, though in a modified degree. By affirming it, and limiting the jury's inquiry to the two facts mentioned in it, the court virtually withdrew all other material facts from the jury, including the disputed fact of performance of the contract by the plaintiff. If the furniture was far inferior to both the written and parol requirements of the contract, the plaintiff cannot recover the contract price, simply because the notice of rescission may have been a day too soon. Goods not according to the contract were shipped at the plaintiff's peril: Fogel v. Brubaker, 122 Pa. 15. But the second refusal was ten days after the arrival of the goods.

3. The plaintiff's fifteenth point is absolutely irreconcilable with our first three points, and they were virtually negatived by its affirmance. A stipulation that future deliveries under a contract shall be equal to a sample exhibited, may become a term of the contract and be enforced as such: Mining Co. v. Jones, 108 Pa. 55. It is well settled that such a parol guaranty may be superadded to a written contract, when without the parol agreement the written one would not have been signed. Yet the jury were instructed, in the answer to the fifteenth point of the plaintiff, that the defendant was estopped from setting up the verbal agreement. The plaintiff's eighth point should have been qualified by explaining that the jury might consider the representations and agreements that induced the signing of the contract, if made at the same interview, although not repeated at the moment of signing: Honesdale Glass Co. v. Storms, 125 Pa. 268. Where articles ordered are to be satisfactory to the vendee, he is the sole judge on that point. If not satisfactory to him, he is not bound to pay for them. His

judgment is final, if exercised in good faith and not through mere caprice: Singerly v. Thayer, 108 Pa. 291 ; Krum v. Mersher, 116 Pa. 26.

*Mr. Alexander C. White* and *Mr. H. C. Campbell*, for the appellee:

1. The points involved in the first three assignments of error are virtually conceded to be correct propositions of law on the facts therein stated. The qualifications of them were as favorable as the defendant had any right to expect. The question of delivery raised by our fourth point, is well settled. Under the rule laid down in Borrekins v. Bevan, 3 R. 23, and followed through a long line of cases down to Selser v. Roberts, 105 Pa. 242, if the desks were of the kind ordered and merchantable in quality, the plaintiff had complied with his part of the agreement, and the delivery to the carrier was a delivery to the defendant, notwithstanding that payment was not demandable until they arrived at Brockwayville.

2. It is clear that the refusal to receive was not based upon any examinations of the desks, but on an alleged agreement giving the defendant the right to rescind. The point on this subject was drawn in accordance with the views expressed by Mr. Justice CLARK when the case was here before: 122 Pa. 494. The argument of the appellant is erroneous in that it is based upon a supposed state of facts which the court submitted to the jury as requested, and which the jury found against the defendant. The court cannot be convicted of error because the jury failed to believe the testimony for the defendant and held it, on the evidence, to its agreement.

3. To vary a written agreement by parol evidence, the testimony must be confined to what took place at its execution: Phillips v. Meily, 106 Pa. 536 ; Walker v. France, 112 Pa. 203 ; Thomas v. Loose, 114 Pa. 35 ; Honesdale Glass Co. v. Storms, 125 Pa. 268. Did the defendant's testimony come up to the standard? It was all admitted and submitted to the jury as the defendant requested. The court is not in fault because it failed to satisfy them. Under the evidence, the only questions for the jury were those stated in the plaintiff's thirteenth point, which contains a correct statement of the law applicable to them. If the defendant accepted a written guaranty, it is bound by it, as a statement of the things guaranteed.

OPINION, MR. JUSTICE CLARK:

At the trial the defendant submitted six points, which fairly and fully presented its theory of this case, and these points, being separately answered, were all affirmed by the court without qualification. Nor is there any assignment of error to the general charge, or to any portion of it. The only matters complained of arise upon the answers of the court to the points submitted by the plaintiff's counsel. These points, it must be confessed, are very inaptly drawn. It may be remarked, generally, that the hypothesis upon which these several points were framed, respectively, in view of the evidence is wholly inadequate to support the conclusions which are sought to be drawn. Every point of law submitted for the determination of the court should be reasonably consistent with the evidence, and in such comprehensive manner that the deduction made therefrom, notwithstanding the force of the other evidence in the cause, is the logical, legal conclusion from the facts assumed. Each point submitted is to be taken as a distinct, independent proposition; and the answer to it may be a simple affirmation or negation of it, or, the answer may be accompanied with such qualification as is requisite to a correct exposition of the law. When a case comes before us for review, we cannot assume any fact not covered by the hypothesis set forth in the point, except such as is embraced by necessary implication. If this were not so, the court might, in some cases, affirm the points on both sides; and, whilst in the answers on one side or the other, the true rule might be given, the jury would be allowed to grope in the dark in search of it, with equal chances to arrive at a wrong or a right result. In such case the assumption of certain facts that are not stated would, if known, show the correct rulings on both sides; but the misleading tendency is such as to be manifest error. If we apply these well-established rules of practice to the instructions given to the jury in this case, we cannot avoid the conclusion that they were misleading to the jury.

In affirming the defendant's first, second, and third points, the court instructed the jury: (1) If they should find that the plaintiff's agent, Sweet, referred the directors to the furniture in the DuBois and Coder school-houses, as specimens of the plaintiff's manufacture, and agreed that if, upon examination

of that furniture, it was unsatisfactory, they need not accept the furniture ordered, and the contract was executed upon the faith of this verbal agreement; and if, upon examination, the furniture at the places named was unsatisfactory, and notice was promptly given to the plaintiff not to ship the order, they were not bound to receive the consignment: (2) If Sweet induced the execution of the contract by means of false and fraudulent representations, and the defendant, upon the discovery of the fraud, annulled the contract, and notified the plaintiff, it was thereby released from the obligations of the contract; and (3) If Sweet, at the time of the contract, exhibited a sample desk, and agreed that the defendant would not be held to accept furniture which was not in all respects equal to the sample, and the contract was entered into upon the faith of this understanding, and, further, that the furniture, when shipped, was not in fact substantially equal to the sample, and the defendant on this ground refused to accept it, and gave proper notice of such refusal, the verdict should be for the defendant. These points assumed the existence of a verbal understanding at the time of the contract upon the faith of which the contract was made; and, as there was some evidence to this effect, whether or not there was any such verbal understanding, or any fraud committed, as alleged, was for the jury. The court might, therefore, with propriety, have negatived the plaintiff's fourth, fifth, and sixth points on this ground, but chose to affirm them with the qualification, " unless the jury further find, from the evidence in the case, the facts contended for in the defendant's first, second, and third points." Having undertaken to affirm the points with this qualification, it was the duty of the court to add all the qualifications to which an absolute affirmation was necessarily subject. But we think these points of the plaintiff, if affirmed, should have been subject to further qualification. If the jury, upon a full consideration of the case, should find that the written contract was made without fraud, and without any superadded verbal understanding, upon the faith of which the contract was executed, the rights and obligations of the parties remained as expressed in the written contract. Having reference, then, to the rights of the plaintiff upon the written contract alone, in order to bind the defendant for the price, it was required of

the plaintiff, not only that the furniture be delivered in the cars at Sidney, Ohio, at the time specified, but that the furniture be of the kind and quality mentioned in the contract.

In the plaintiff's sixth point the court was requested to instruct the jury as follows: "That if the jury find, from the evidence, that the agreement of purchase offered in evidence in this case was read over in the presence and hearing of the board of directors of the defendant corporation before signing, and was understood by them, and no objection was made by any one thereto as it was so read and signed, then said agreement is to be taken as the agreement between plaintiff and defendant corporation, and the verdict of the jury should be for the amount so agreed to be paid in favor of the plaintiff." To this the court answered: "Affirmed, unless the jury further find, from the evidence in the case, the facts as contained in defendant's first, second and third points." But suppose the jury should fail to find the facts contained in the first, second and third points of the defendant, and should find, as assumed in the point, that the written agreement was the only agreement subsisting between the parties, does it follow as a matter of law, in view of the evidence, that the verdict of the jury should be for the amount so agreed to be paid in favor of the plaintiff? Can it be affirmed that the plaintiff was entitled to a verdict upon the proof of the written contract alone, without evidence of a delivery in pursuance of that contract, or, if there was a delivery, without evidence of the kind and quality of the desks delivered, or of a refusal on the part of the defendant to receive the furniture when it was delivered? There was, in fact, evidence upon all these points, not only of delivery, and of the kind or quality of the desks delivered, but also of a refusal on the part of the defendant to receive the desks after delivery; but this evidence was for the jury, not for the court. The hypothesis of the point was not sufficiently comprehensive, and it should have been refused; or, if affirmed, it should have been further qualified.

The answers to the plaintiff's fourth and fifth points are open to similar criticism. The fourth is directed to the question of delivery alone, whilst the fifth is upon the effect of Temple's refusal to receive the furniture on its arrival at Brockwayville. But in neither of them is it assumed, as part of the hypothetical statment of facts, that the furniture delivered, or the furni-

ture refused, was of the kind contracted for; and certainly, without the assumption of this fact, it could not be affirmed, as matter of law, that the "plaintiff could maintain this action to recover the amount so agreed to be paid, with interest." It is true that the court, in affirming the defendant's fourth point, instructed the jury that if the furniture at Brockwayville was not substantially up to the guaranty contained in the contract, and was not satisfactory to the defendant, the verdict of the jury should be for the defendant; and, in the sixth point, that if only part of the furniture shipped was in accordance with the contract, and the rest was inferior, the defendant was not bound to accept any of it. But how were the jurors to decide between these inconsistent rulings? They were obliged to rely upon the court for instructions, and would not be expected to exercise that degree of discrimination which would enable them to reconcile the various inconsistent rulings of the court.

The thirteenth point of the plaintiff is open to the same objection. The matters of fact assumed therein do not justify the conclusion which, by an absolute affirmation, the jury was permitted to draw therefrom.

It is undoubtedly true, when the agreement is to make and deliver an article to the satisfaction of the person for whom it is made, the latter, acting in good faith, and not from mere caprice, may refuse to accept if, for any reason, it is really not satisfactory to him: Singerly v. Thayer, 108 Pa. 291; Seeley v. Welles, 120 Pa. 69. But when the refusal to receive is made before an actual, bona fide inspection of the article, or before an opportunity is had to judge of its quality or merits, no such rule could obtain; for it would be impossible, in such a case, to decide whether the article is satisfactory or not.

The agreement between the parties was in writing; and, as a general rule, where parties have deliberately put their engagements into writing, in such terms as import a legal obligation, without any uncertainty as to the object or extent of such engagement, it is conclusively presumed that the whole engagement of the parties, and the extent and manner of their undertaking, was reduced to writing; and all oral testimony of a previous colloquium between the parties, or of conversations or declarations at the time when it was completed, or afterwards,— as it would tend, in many instances, to substitute a new and dif-

ferent contract for the one which was really agreed upon, to the prejudice, possibly, of one of the parties,—is rejected: 1 Greenl. Ev., 351. But a written agreement may be modified, explained, reformed or altogether set aside by parol evidence of an oral promise or undertaking material to the subject-matter of the contract, made by one of the parties at the time of the execution of the writing, and which induced the other party to put his name to it: Walker v. France, 112 Pa. 203; Cullmans v. Lindsay, 114 Pa. 170. The law esteems it a fraud by such means to procure an unfair advantage, and subsequently to deny the parol qualification upon the faith of which the contract was made. In such a case, therefore, it cannot, with propriety, be said that a person, having accepted a written contract, is estopped from setting up by parol any agreement except that mentioned in the contract. The parol evidence, however, which will be effective to reform a written instrument in such a case, must be clear, precise and indubitable; that is to say, it must carry clear conviction to the minds of the jurors that the witnesses are credible, that the facts are distinctly remembered, and are truly and accurately stated; and to the mind of the court that, if the facts alleged are true, the matters in issue are definitely and distinctly established: Cullmans v. Lindsay, supra.

The judgment is reserved and a venire facias de novo awarded.