# American Harrow Company *v.* Swoope.

*Evidence—Parol evidence—Contract—Fraud.*

A written agreement may be modified, explained, reformed or altogether set aside by parol evidence of an oral promise or undertaking material to the subject-matter of the contract made by one of the parties at the time of the execution of the writing, and which induced the other party to put his name to it. The law esteems it a fraud by such means to secure an unfair advantage and subsequently to deny the parol qualification, upon the faith of which the contract was made.

In an action by a corporation, which was a manufacturer of agricultural implements, against a farmer to recover the price of implements alleged to have been sold and delivered, defendant may be permitted to prove by parol that the plaintiff's agent came to him with a paper in the English language, that defendant could not read English, that the agent explained to him, that he, the defendant, was to sell harrows, and receive a commission therefor, but that he was not to do any collecting, and that defendant relied upon this representation, and was induced to sign the printed contract, which was in fact a contract for the purchase of harrows and other agricultural implements.

Argued Oct. 25, 1900. Appeal, No. 125, Oct. T., 1900, by defendant, from judgment of C. P. Clearfield Co., Sept. T., 1899, No. 347, on verdict for plaintiff in case of American Harrow Company v. Philip Swoope. Before RICE, P. J., BEAVER, ORLADY, W. W. PORTER and W. D. PORTER, JJ. Reversed.

Assumpsit for goods sold and delivered.

At the trial it appeared that on December 14, 1897, plaintiff and defendant entered into a contract in writing which although confusing in character appeared on its face to be a contract for the sale of certain agricultural implements, chiefly harrows. The terms of this contract are set out in the opinion of the Superior Court.

When the defendant was on the stand it was proposed to prove by him that at the execution of the contract, before the same was signed and as the inducement offered the defendant for signing the contract, that the defendant asked Howard, plaintiff, agent for the American Harrow Company, how the sales were to be made and how he should sell them; that Howard said: " You sell the harrows and just take the paper in our

names and we do the collecting; we don't want you to do the collecting. They would say: 'Old Philip Swoope is a pretty good fellow and he can wait a while;'" that the defendant was to have a certain commission out of each sale and was not to pay for any of the harrows until he would sell each of them, when he was to remit the amount when it was collected less his commission to the company; and that on the strength of this he signed the paper. This to be followed by evidence of the letters and papers and corroborative testimony of Samuel Barnickle as to what took place prior to the execution of this paper.

Mr. Harris: Objected to for the reason that the contract between the parties dated December 14, 1897, is in writing, and the testimony proposed to be offered is incompetent, because in effect it destroys the contract between the parties that has been offered in evidence and is in writing. It is immaterial, and for these reasons is objected to.

The Court: State the purpose of that offer.

Mr. Wilson: The purpose of the offer is to show (1) that the agreement was executed upon the faith of this oral or contemporaneous agreement, and was the inducement for the signing of said contract. (2) For the purpose further of showing that it changes the conditions of sale, the conditions or terms as stated in the contract. (3) For the purpose of showing that taking the contract together, with the evidence that has been offered and proposed to be offered, that the whole thing constituted an agency under this contract.

Mr. Harris: We want to further object for the reason that the contract between the parties dated December 14, 1897, is a contract of sale, providing that the goods sold were to be handled during the season of 1898, and that the purchase money for the machinery was to be payable on December 1, 1898.

Mr. Wilson: I want to add one thing more to my offer. This offer and the purpose thereof being based upon an allegation of fraud, that from the above facts as stated in the offer there was perpetrated a fraud upon the defendant in this case.

The Court: This is the only offer to prove fraud that you have.

Mr. Wilson: Yes, sir.

The Court: The purpose of the proposed evidence stated being to contradict the written contract, to prove that the real contract between the parties was different from that set forth in the writing, to wit: that by it defendant became plaintiffs' agent for the sale of the property in question instead of a purchaser of it as stipulated in the writing, this can only be done by proof of fraud, accident or mistake. The fraud alleged would not be established by the proposed evidence as held in Thorne, McFarlane & Co. v. Warfflein, 100 Pa. 519. The fact that the alleged oral agreement differs from the writing is not evidence of fraud. The objection is therefore sustained, evidence excluded and exception noted for defendant. [1]

The court gave binding instructions for plaintiff.

Verdict and judgment for plaintiff for $527.19. Defendant appealed.

*Errors assigned* were (1) ruling on evidence, quoting the bill of exceptions. (3, 4) In giving binding instructions for plaintiff.

*S. V. Wilson*, for appellant.—The court erred in not permitting the defendant to show the statements made to him which were the inducement for signing the written agreement: Sidney School Furniture Co. v. Warsaw School Dist., 130 Pa. 93; Walker v. France, 112 Pa. 203; Cullmans v. Lindsay, 114 Pa. 170; Keough v. Leslie, 92 Pa. 427; Ferguson v. Rafferty, 128 Pa. 339; Smith v. Harvey, 4 Pa. Superior Ct. 377; Clinch Valley Coal & Iron Co. v. Willing, 180 Pa. 166.

*J. M. Urey*, of *Harris & Urey*, for appellee.—When the parties, without fraud or mistake, have put their engagements in writing, that is not only the best, but the sole evidence of their agreement: Martin v. Berens, 67 Pa. 459; Irvin v. Irvin, 142 Pa. 286; Plunkett v. Roehm, 12 Pa. Superior Ct. 86; Clarke v. Allen, 132 Pa. 40; Zeigler v. McFarland, 147 Pa. 607; Thorne, McFarlane & Co. v. Warfflein, 100 Pa. 519.

OPINION BY W. D. PORTER, J., March 19, 1901:

The agreement upon which this action was brought was upon a printed form and very confusing in its terms. The various

covenants, while, perhaps, capable of being construed together, would seem to the average mind to be conflicting. Under the terms of the first section of the second article contained therein, the defendant agreed to purchase and pay for the goods in the contract enumerated. The third section of the same article required the defendant, " to make the best endeavors to sell all goods possible in the territory hereinafter described, by exhibiting said goods, distributing printed matter, canvassing the territory." The said goods referred to are those which are the subject-matter of this contract. Section 4 required the defendant " to order of said first party such additional goods as second party shall be able to sell in territory named; all goods so ordered to be subject to all of the terms, conditions and agreements hereof, the same as though expressly described therein." Section 6 of the same article bound the defendant to do no act, or sell at any price which should be injurious to the trade in said goods of said first party, or its other vendees, consignees or agents, and not to sell in any territory except that mentioned. The defendant was thus required to use the very goods which are the subject-matter of this contract for the purpose of exhibition, to the end that he might sell other goods; if he sold other goods he must procure those goods from the plaintiff and he must refrain from doing any act or selling at any price which might injure the trade in said goods of the party of the first part. The plaintiff, under this agreement, acquired the right to the services of the defendant in making sales of its goods, and reserved the right to dictate the price at which he should sell the goods which are the subject-matter of this contract. Article three of the contract limited the time in which the defendant might sell the goods to the season of 1898, and the territory in which he might sell them to the townships of Brady and Sandy, in the county of Clearfield. Article four provided that if the defendant should fail to promptly keep and perform any of said engagements, the plaintiff might retake the goods.

The plaintiff was a manufacturer of agricultural implements, and its authorized agent called upon the defendant, a farmer who could not read the English language, and entered into this contract. The contract was printed in English and for any knowledge of its contents, the defendant was dependent upon the representations of the plaintiff's agent. It was very nat-

ural for the defendant to inquire as to the manner in which the goods in question were to be paid for. The inquiry was made and the defendant, at the trial, proposed to prove what representations were made by the plaintiff in answer to his question. The defendant made this formal offer: " The defendant, Philip Swoope, being on the stand, it is proposed to prove by him that at the execution of the contract, before the same was signed, and as the inducement offered the defendant for signing the contract, that the defendant asked Howard, plaintiff's agent, how the sales were to be made, and how he should sell them; that Howard said: 'You sell the harrows and just take the paper in our names and we do the collecting; we don't want you to do the collecting. They would say, old Philip Swoope is a pretty good fellow and he can wait a while;' that the defendant was to have a certain commission out of each sale and was not to pay for any of the harrows until he should sell each of them, when he was to remit the amount when it was collected, less his commission, to the company; and that on the strength of this he signed the paper. This to be followed by evidence of the letters and papers and corroborative testimony of Samuel Barnickle as to what took place prior to the execution of this paper." The purpose of the offer was stated to be to show that the agreement was executed upon the faith of this contemporaneous oral agreement, which was the inducement for the signing of the contract; and that the whole contract constituted an agency and not a sale. The learned court below sustained an objection to this offer, and upon this ruling all of the assignments of error are ultimately dependent.

In order to vary the terms of a written instrument there must, it is true, be evidence of fraud, accident or mistake other than that which may be derived from the mere difference in the parol and written terms: Thorne, McFarlane & Co. v. Warfflein, 100 Pa. 519. That other evidence of fraud may, however, be found in the circumstances under which the parties acted, or in the use which is subsequently sought to be made of the written instrument. The offer of the defendant, if sustained by evidence which conformed to the legal requirements in such cases, would have established that the defendant was induced to sign the contract by the statement or contemporaneous oral agreement. When a party is thus inveigled into signing a written

contract upon the faith of a contemporaneous agreement, which is violated as soon as it has accomplished its purpose in securing the execution of the paper, that oral agreement may always be shown when the enforcement of the paper is attempted. Mr. Justice WILLIAMS, who delivered the opinion of the court in Clinch Valley Coal & Iron Company v. Willing, 180 Pa. 165, said: " It is a plain fraud to secure the execution of an instrument by representations as to the manner in which payments shall be made differing in important particulars from those contained in the paper, and after the paper has been signed attempt to compel literal compliance with its terms, regardless of the contemporaneous agreement, without which it would never have been signed at all." A written agreement may be modified, explained, reformed or altogether set aside by parol evidence of an oral promise or undertaking material to the subject-matter of the contract made by one of the parties at the time of the execution of the writing and which induced the other party to put his name to it. The law esteems it a fraud by such means to secure an unfair advantage and subsequently to deny the parol qualification, upon the faith of which the contract was made: Walker v. France, 112 Pa. 203; Cullmans v. Lindsay, 114 Pa. 170; Sidney School Furniture Company v. Warsaw School District, 130 Pa. 76; Ferguson v. Rafferty, 128 Pa. 337. If the uncontradicted evidence in this case was to be believed, the defendant could not read the contract, which was in English, and his ability to write was limited to the signing of his name. He was thus at the mercy of plaintiff's agent, upon whose representations he was compelled to rely. If the agent misrepresented the contents of the contract, or by a contemporaneous oral agreement, varying its terms, induced the defendant to sign the agreement, it was competent for the defendant to show that fact by evidence such as the nature of the case demanded. The evidence might not have come up to the required standard, but that question cannot be determined until the defendant has had an opportunity to put in his case. The assignments of error are sustained.

The judgment is reversed and a venire facias de novo awarded.

RICE, P. J., dissents.