580 A.2d 39

**Ann ROBERSON a/k/a Ann Roberson Davis, Appellant,**

**v.**

**William Scott DAVIS, Appellee.**

Superior Court of Pennsylvania.

Argued March 28, 1990.

Filed Sept. 20, 1990.

Stephen H. Silverman, Jenkintown, for appellant.

Ronald J. Harper, Philadelphia, for appellee (submitted).

Before WIEAND, BECK and POPOVICH, JJ.

WIEAND, Judge:

In this appeal we are called upon to consider the property rights of parties to a meretricious relationship upon termination of their cohabitation.

Ann Roberson and William Scott Davis cohabited from 1975 to November, 1984. Davis was already married; and, therefore, the relationship between Davis and Roberson was at all times meretricious. In 1975, Roberson moved into a residence owned by Davis at 922 East Slocum Street, Philadelphia,[1] where she and Davis lived together until November, 1977. At that time, the parties moved into a home at 1440 Ashbourne Road, which had been purchased by Davis for the sum of one hundred thousand ($100,000.00) dollars. The property was subsequently improved by the addition of a swimming pool. Title to the real estate was at all times vested in Davis.

After Roberson and Davis had terminated their meretricious relationship, Roberson commenced an action in equity to construct a trust or otherwise acquire a one-half interest in the Ashbourne Road property, including the swimming pool. She also requested a transfer of title to a Mercedes vehicle which, allegedly, belonged to her but which was titled in the name of Davis. The trial court, following trial without jury, granted relief with respect to the Mercedes automobile but denied relief as to the real estate and

---

1. At this time, Roberson owned her own home at 1125 E. Upsal Street, Philadelphia.

swimming pool. Exceptions were denied, the decree became final, and Roberson appealed.

"The trial judge, sitting in equity as a chancellor, is the ultimate fact-finder." *Fiumara v. Fiumara*, 285 Pa.Super. 340, 346, 427 A.2d 667, 670 (1981), quoting *Balin v. Pleasure Time, Inc.*, 243 Pa.Super. 61, 68, 364 A.2d 449, 453 (1976). The scope of review, therefore, is limited. The final decree will not be disturbed unless the chancellor committed an error of law or abused his or her discretion. *Sack v. Feinman*, 489 Pa. 152, 165–166, 413 A.2d 1059, 1066 (1980), *appeal denied after remand*, 495 Pa. 100, 432 A.2d 971 (1981); *Commonwealth, Dept. of Environmental Resources v. Pa. Power Co.*, 461 Pa. 675, 337 A.2d 823 (1975). The findings of fact made by the trial court will not be disturbed unless they are unsupported by competent evidence or are demonstrably capricious. *Hostetter v. Hoover*, 378 Pa.Super. 1, 6, 547 A.2d 1247, 1250 (1988), *allocatur denied*, 523 Pa. 642, 565 A.2d 1167 (1989), quoting *Rosen v. Rittenhouse Towers*, 334 Pa.Super. 124, 129, 482 A.2d 1113, 1116 (1984).

In the instant case, the chancellor found that the purchase of the Ashbourne Road property had been financed by proceeds from the sale of Davis's home on East Slocum Street and moneys borrowed by Davis from Jefferson Bank.[2] The loan was secured by a mortgage on the residence and was being repaid by monthly payments made by Davis, who also paid the costs of maintaining and insuring the real estate. The chancellor rejected a requested finding by Roberson that Davis had agreed, either expressly or by implication, to convey a one-half interest in the real estate to her. The chancellor also rejected appellant's contention that a partnership or joint venture had been created with respect to such real estate. The chancel-

---

**2.** The evidence was that Davis had purchased the property in order to make a home for his aged mother.

lor's findings are supported by the record and are binding upon a reviewing court.

In view of these findings, the chancellor did not err in concluding that Roberson was not entitled to construct a trust with respect to the Ashbourne Road property. "A constructive trust arises where a person holding title to property is subject to an equitable duty to convey it to another on the ground that he would be unjustly enriched if he were permitted to retain it." *Denny v. Cavalieri,* 297. Pa.Super. 129, 133, 443 A.2d 333, 335 (1982). "Such a trust may arise where there is a breach of confidential relationship by the transferee, or it may arise out of circumstances evidencing fraud, duress, undue influence or mistake." *Id.* The controlling factor is not the specific intent between the parties to create a constructive trust but whether imposition of a constructive trust is necessary to prevent unjust enrichment. See: *DePaul v. DePaul,* 287 Pa.Super. 244, 248, 429 A.2d 1192, 1194 (1981). See also: *Stauffer v. Stauffer,* 465 Pa. 558, 351 A.2d 236 (1976). One who seeks to construct a trust bears a heavy burden of proof; the evidence must be "clear, direct, precise and convincing." *Masgai v. Masgai,* 460 Pa. 453, 460, 333 A.2d 861, 865 (1975), quoting *Policarpo v. Policarpo,* 410 Pa. 543, 189 A.2d 171 (1963); *Wosche v. Kraning,* 353 Pa. 481, 483, 46 A.2d 220, 222 (1946). "[U]nless the evidence of the existence of [a constructive trust] is of the highest probative value, equity should not act to convert an absolute ownership into an estate of lesser quality." *Masgai v. Masgai,* *supra,* 460 Pa. at 460, 333 A.2d at 865, quoting *Sechler v. Sechler,* 403 Pa. 1, 7, 169 A.2d 78, 81 (1961). Here, there was neither a confidential relationship between the parties nor evidence of fraud or other circumstances requiring the construction of a trust in order to do equity and avoid unjust enrichment. See: *McCall v. Frampton,* 99 Misc.2d 159, 415 N.Y.S.2d 752 (1979). Appellant did not become entitled to an interest in Davis's real estate by virtue of her relationship with him or because, on occasion, she purchased groceries or performed services which benefitted the

occupants of the residence.[3] See: *Taylor v. Polackwich,* 145 Cal.App.3d 1014, 194 Cal.Rptr. 8 (1983); *Keene v. Keene,* 57 Cal.2d 657, 21 Cal.Rptr. 593, 371 P.2d 329 (1962) (services as housekeeper and cook insufficient to create trust in real estate); *Baskett v. Crook,* 86 Cal.App.2d 355, 195 P.2d 39 (1948); *Smith v. Smith,* 108 So.2d 761 (Fla. 1959) (amount contributed in defraying mutual living expenses insufficient to create interest in real estate owned by other cohabitant).

■ The parties to this action did not enter a marital relationship. The relationship, rather, was meretricious. Consequently, appellant did not acquire a claim to Davis's real estate by virtue of cohabitation. *Knauer v. Knauer,* 323 Pa.Super. 206, 228, 470 A.2d 553, 564 (1983). The trial court found that there was no agreement that appellant should have or acquire an interest in Davis's real estate and neither a partnership nor joint venture with respect thereto. These findings are fully supported. It follows, then, that the chancellor did not abuse his discretion by rejecting appellant's claim to an interest in Davis's real estate.

There is no merit in appellant's argument that the chancellor's refusal to construct a trust of the real estate was inconsistent with the award of the Mercedes vehicle to her. The circumstances surrounding the real estate and those surrounding the automobile were different. The cost of the automobile had been paid by Roberson, but the vehicle had been titled in Davis as a matter of convenience because Roberson's credit problems had prevented her from obtaining a loan in her name. Thus, it was Roberson who was the real owner of this vehicle. The title to the real estate, on the other hand, had been placed in Davis's name because he was the purchaser and bona fide owner thereof.

■ The swimming pool was placed on the real estate under circumstances which differed from the acquisition of either the car or the real estate. The initial cash involve-

---

**3.** There was a factual dispute as to whether appellant lived with Davis continuously or whether she stayed with him, in his home, on weekends. The chancellor found it unnecessary to resolve this issue.

ment, the chancellor found, had been a gift by Roberson to Davis. After the pool had been installed, it was Davis who finished making the payments. The chancellor's findings are supported by competent evidence. In view of these facts, the chancellor did not err in refusing to require that appellant be reimbursed or otherwise compensated for her initial outlays.

■ Finally, the chancellor did not err when he allowed the appellee-defendant to amend his answer to deny more specifically the averments of appellant's complaint. A party, by leave of court, may amend his pleading at any time. Pa.R.C.P. 1033.

> Grant of leave to amend is limited only to a consideration of whether or not it might unduly prejudice an adverse party. *Sullivan v. Allegheny Ford Truck Sales, Inc.,* 283 Pa.Super. 351, 423 A.2d 1292 (1980). Prejudice has been defined by this court as "something more than a detriment to the other party, 'since any amendment almost certainly will be designed to strengthen the legal position of the amending party and correspondingly to weaken the position of the adverse party.'" *Sands v. Forrest,* 290 Pa.Super. 48, 53, 434 A.2d 122, 125 (1981). The decision of the lower court that amendment will be allowed and will not unduly prejudice the adverse party will only be reversed upon a showing of a clear abuse of discretion. *Junk v. East End Fire Department,* 262 Pa.Super. 473, 396 A.2d 1269 (1978).

*Winterhalter v. West Penn Power Co.,* 355 Pa.Super. 17, 22, 512 A.2d 1187, 1189 (1986). In determining the existence of prejudice, a court may be guided by the teaching of the Pennsylvania Supreme Court in *Bata v. Central–Penn National Bank of Philadelphia,* 448 Pa. 355, 293 A.2d 343 (1972), *cert. denied,* 409 U.S. 1108, 93 S.Ct. 910, 34 L.Ed.2d 689 (1973). The Court there said:

> All amendments have this in common: they are offered later in time than the pleading which they seek to amend. If the amendment contains allegations which would have been allowed inclusion in the original pleading (the usual

case), then the question of prejudice is presented by the time at which it is offered rather than by the substance of what is offered. The possible prejudice, in other words, must stem from the fact that the new allegations are offered late rather than in the original pleading, and not from the fact that the opponent may lose his case on the merits if the pleading is allowed....

*Id.,* 448 Pa. at 380, 293 A.2d at 357 (footnote omitted).

In the instant case, the averments of the complaint had been denied in the answer filed by appellee. Appellant argued, however, that the denials were too general and that the averments of the complaint, therefore, should be deemed admitted. The chancellor rejected appellant's argument and allowed the answer to be amended to deny more specifically the averments of the complaint. This enabled the chancellor to receive evidence on disputed issues and make a factual determination unfettered by a technical interpretation of the rules of pleading. This was not an abuse of discretion.

The final decree is affirmed.