**Lloyd SPINNER, Plaintiff,**

v.

**Dolores A. FULTON and Bernard B. Fulton, a/k/a Robert Fulton, Defendants.**

**Civ. A. No. 1:CV–89–0745.**

United States District Court, M.D. Pennsylvania.

April 3, 1991.

Gary E. French, Harrisburg, Pa., for plaintiff.

Roger T. Shoop, Thomas & Thomas, Larry B. Selkowitz, Mary Catherine Frye, Reager Selkowitz & Adler, P.C., Harrisburg, Pa., for defendants.

## MEMORANDUM

RAMBO, District Judge.

The captioned action was tried to the court in a nonjury proceeding on March 18, 1991. The plaintiff, Lloyd E. Spinner (Spinner), and defendants Dolores A. and Bernard B. Fulton (the Fultons) are, respectively, the surviving husband and parents of Ylynne M. Fulton ("decedent" or Ylynne Fulton), who died in Philadelphia on April 5, 1988. Spinner was married to but separated from decedent at the time of her death. For the past several years, Spinner and the Fultons have been involved in a dispute over the proper distribution of the estate and insurance proceeds on the life of the decedent. Only the dispute over the insurance proceeds is before this court. The parties have raised certain issues that make a brief discussion of the state court action necessary.

The estate matter was decided in favor of the Fultons by an administrative law judge of the Philadelphia Orphans' Court, who ruled that defendant had forfeited his intestate share of decedent's estate as a result of his consent to their separation. That decision was overturned by an *en banc* panel of the Philadelphia Orphans' Court, which ruled that the administrative law judge erred and abused his discretion in finding that Spinner had consented to the separation.[1] That decision is now before the Pennsylvania Superior Court on appeal.

In the course of the life insurance dispute before this court, the parties have argued whether and to what extent this court must be bound by the findings of fact in the related state action. In light of the facts that the administrative law judge made certain findings of fact, the court *en banc* made certain contrary findings of fact, the case is now on appeal before the Superior Court, and the issues before this

court are distinct from those before the state court, this court will not adopt any of the findings of fact from the state court decision. Accordingly, the court makes its own findings of fact.

FINDINGS OF FACT

1. Plaintiff Lloyd Spinner is an adult individual who currently resides in Woodstock, Virginia.

2. Defendant Dolores A. Fulton is an adult individual who currently resides in Harrisburg, Pa.

3. Defendant Bernard B. Fulton is an adult individual who currently resides in Atlantic City, New Jersey.

4. Ylynne M. Fulton was the daughter of Dolores A. and Bernard B. Fulton.

5. Spinner married Ylynne M. Fulton on or about August 2, 1984.

6. After their marriage, Ylynne Fulton and Spinner lived in an apartment together in Virginia for several months at most.

7. Ylynne Fulton withdrew from the marital apartment in Virginia for unexplained reasons in either September or November 1984, after which time Spinner never saw Ylynne Fulton again.

8. After Ylynne Fulton withdrew from the marital apartment, she and Spinner remained separated but legally married until Ylynne Fulton's death on April 5, 1988.

9. When Ylynne Fulton left the marital apartment in Virginia, she resided for a time in Connecticut, then in Atlantic City, New Jersey with her father, and finally, at the time of her death, in Philadelphia, Pennsylvania.

10. From the time Ylynne Fulton left the marital apartment in September or November 1984 until the date of her death, she conducted herself as being single, used her maiden name, dated other men, and listed herself as single on her income tax return forms, employment-related forms, and other official documents.

11. In approximately March 1985, Spinner began to reside with a woman, Margaret Weaver, with whom he continued to live

---

1. *Estate of Ylynne M. Fulton, Deceased,* 11 Pa. Fid.2d 222 (C.P.Phila., Orphans' Ct.Div.1990).

until 1988 and to whom he fathered a child born in January 1986.

12. Spinner never initiated contact by any means directly with Ylynne Fulton and never saw her again after she withdrew from the marital home in September or November 1984.

13. Dolores A. and Bernard B. Fulton did not provide direct financial assistance to Ylynne Fulton after her marriage to and separation from Spinner although they did provide indirect assistance by intermittently providing a place to live and meals.

14. Ylynne Fulton maintained regular and frequent contact and a close and affectionate relationship with the Fultons up until the time of her death.

15. Ylynne Fulton held several jobs in succession after leaving the marital apartment in 1984.

16. In January 1988, approximately three months prior to her death, Ylynne Fulton began a new job, with Warner Communications of New York, which required her to travel frequently.

17. Pursuant to her employment with Warner Communications of New York, Hartford Accident and Indemnity Company issued a life insurance policy on her life in the amount of $37,500.00 (thirty-seven thousand five hundred dollars) under Group Travel/Accident Insurance Policy ETB–10859, which policy was in effect at the time of her death in April 1988.

18. In the event the policy holder failed to designate a beneficiary, Rider No. 5 to policy ETB–10859 listed beneficiaries in a descending order of preference of their entitlement to the life insurance proceeds.

19. Ylynne Fulton never designated a beneficiary in writing under policy ETB–10859.

20. Rider No. 5 designated the surviving spouse as the first priority beneficiary in the event the policy holder failed to designate a beneficiary in writing.

21. Rider No. 5 designated the parents as the next priority beneficiary in the absence of a surviving spouse or children.

22. Ylynne Fulton died intestate and childless, and was survived by Spinner and her parents, Dolores A. and Bernard B. Fulton.

23. Hartford Accident and Indemnity Company paid the entire amount of the proceeds due under policy ETB–10859 to Dolores A. and Bernard B. Fulton in November 1988.

24. The proceeds paid under ETB–10859 are currently being held in escrow by Spinner's attorneys, Keefer, Wood, Allen & Rahal, pending the resolution of this action.

25. Under a life insurance policy issued in 1982 pursuant to her prior employment with Essence Magazine, Ylynne Fulton listed herself as single and designated her mother, Dolores Fulton, as beneficiary.

26. All employment forms executed after Ylynne Fulton's separation from Spinner designate her mother, Dolores Fulton, as the party to be contacted in case of emergency.

27. The Fultons assumed all responsibility for funeral arrangements and organizational matters after Ylynne Fulton's death, an arrangement to which Spinner willingly acquiesced.

DISCUSSION

The parties agree that the legal title to the disputed life insurance policy proceeds rests with Spinner, as decedent's legal spouse. The Fultons, however, argue that in light of the length of the estrangement between Spinner and their daughter and the short duration of their marriage, to allow Spinner to receive the proceeds of the policy would be unconscionable and would unjustly enrich Spinner. The Fultons claim, further, that decedent's failure to designate a beneficiary was the result of an accident or mistake and, therefore, to avoid unjust enrichment, the court should impose against Spinner a constructive trust of the insurance proceeds in their favor.

Spinner counters, in essence, that the evidence does not support the imposition of a constructive trust. Spinner argues that the Fultons have not met their burden of proving the elements in support of a constructive trust by clear, direct, precise, and

convincing evidence. Spinner would rely on the decision in his favor in the state court proceeding and, in fact, urges this court that the doctrine of collateral estoppel requires this court to follow the *en banc* decision of the Philadelphia Orphans' Court and precludes independent factual findings in this proceeding.

■ The court will dispose of Spinner's collateral estoppel argument first. The question before the state courts is whether Spinner forfeited his statutory intestate share of Ylynne Fulton's estate by consenting to his separation from her. The question here is whether all the facts viewed together warrant the imposition of a constructive trust against Spinner for life insurance proceeds to which Spinner holds legal title by default because the decedent failed to affirmatively designate a beneficiary. Although some of the factual issues may overlap in the two matters, the ultimate factual and legal issues before this court are separate and distinct from those before the state court. Moreover, the *en banc* Orphans' Court drew factual and legal conclusions that directly contradicted those drawn by the administrative law judge, though the two tribunals considered precisely the same underlying set of facts. It is impossible to predict whether on appeal the Superior Court will adopt the factual findings of the administrative law judge or the *en banc* Orphans' Court or, more important, what legal conclusion as to "consent to separation" the Superior Court will draw. In sum, this court does not find Spinner's collateral estoppel argument persuasive.

■ Nevertheless, the question of whether to impose a constructive trust poses a most difficult issue for the court's decision, one which the court must address without the benefit of strong factual precedent. The cases cited in the briefs submitted to the court are readily distinguishable from the one at bar, for reasons freely acknowledged by the parties, and the court will not restate those distinctions. Indeed, the court's research revealed that the request for a constructive trust in this distinct factual context, or one helpfully analogous to it, has not been addressed in a reported decision. The court shall attempt, nevertheless, to achieve a result consistent with the equitable principles underlying the law of constructive trusts.

■ In Pennsylvania, as in most jurisdictions, a court sitting in equity is imbued with considerable discretion in determining whether a constructive trust is appropriate; there is no fixed rule to dictate whether the facts of a case require or forbid the imposition of such a trust. *See Stauffer v. Stauffer*, 465 Pa. 558, 568, 351 A.2d 236, 241 (1976); *Denny v. Cavalieri*, 297 Pa.Super. 129, 133–34, 443 A.2d 333, 335 (1982). The certain guidelines in the law of constructive trusts are: 1) the ultimate test for whether to grant such a trust is whether it is necessary to prevent unjust enrichment; and 2) the imposition of the trust does not require proof that the parties intended it. *See Stauffer*, 465 Pa. at 568, 351 A.2d at 241; *Roberson v. Davis*, 397 Pa.Super. 292, 580 A.2d 39, 41 (1990). The purpose and spirit of the law of constructive trusts is best stated thus:

> A constructive trust is the formula through which the conscience of equity finds expression. When property has been acquired in such circumstances that the holder of the legal title may not in good conscience retain the beneficial interest equity converts him into a trustee.... A court of equity in decreeing a constructive trust is bound by no unyielding formula. The equity of the transaction must shape the measure of relief.

*Id.* (quoting *Beatty v. Guggenheim Exploration Co.*, 225 N.Y. 380, 386, 122 N.E. 378, 380–81 (1919). The quoted language suggests that the essential finding is that the constructive trust is necessary to prevent unjust enrichment. The language also suggests that the distinctive facts in each case are most significant to the balancing of equities. Since the distinctive facts may be relied upon to impose a constructive trust against one who holds legal title to property, they must be proved by clear, direct, precise and convincing evidence. *Roberson v. Davis*, 580 A.2d at 41

(citation omitted); *GAF Corp. v. Amchem Products, Inc.*, 514 F.Supp. 943, 962–63 (E.D.Pa.1981). The court may impose a constructive trust when the facts show that unjust enrichment would ensue as a result of a breach of a confidential relationship, or fraud, duress, undue influence, or mistake. *Denny v. Cavalieri*, 297 Pa.Super. at 133, 443 A.2d at 335 (quoting *Chambers v. Chambers*, 406 Pa. 50, 54, 176 A.2d 673, 675 (1962). In this case, only the possibility of a mistake or inattention in regard to the beneficiary form is relevant.

In essence, Spinner would reduce this case to a question of whether the Fultons have proved by clear and convincing evidence that a mistake involving the beneficiary form occurred. Spinner seems to equate that standard of proof with conclusive testimonial evidence that a mistake occurred, which, of course, cannot be forthcoming in this case. In this court's view, the determination is not that simple nor is the required proof quite so demanding. The court is cognizant of the fact that when fraud, as opposed to mistake, is relied upon to support the imposition of a constructive trust, such fraud need not be conclusively proven but can be inferred from the totality of the circumstances surrounding the parties, including the subsequent conduct of the parties. *See, e.g., Denny v. Cavalieri*, 297 Pa.Super. at 134, 443 A.2d at 335–36. The standard can be no more stringent when the party seeking a constructive trust would rely on mistake as the basis of the trust.

There is a point beyond which the arguments over the standard of proof become unhelpful exercises in semantics and, perhaps, artifice. The court is aware of language requiring clear and convincing proof of either a confidential relationship, or fraud, duress, undue influence, or mistake to justify the imposition of a constructive trust, *see Butler v. Butler*, 464 Pa. 522, 531, 347 A.2d 477, 481 (1975), but it does not interpret that standard to require direct conclusive proof of one of those conditions. Rather, the language of *Stauffer, Denny v. Cavalieri*, and other decisions suggests that the seeking party must show the court that the totality of the facts, which must be

proven with clear and convincing evidence, demonstrate that unjust enrichment will occur absent the imposition of the constructive trust. As Pennsylvania's Supreme Court reiterated in *Stauffer*, the court acts as the "conscience of equity" and is bound by no unyielding formula when deciding whether the facts warrant the imposition of a constructive trust. *See also Truver v. Kennedy*, 425 Pa. 294, 307, 229 A.2d 468, 473–474 (1967).

It is clear from the case law that the "clear and convincing" standard does not require the court to find specific intent to create a trust, or to conclusively prove fraud when that is the basis for the request. Neither, in this case, does that standard require a finding of intent on the part of the decedent to deny Spinner the benefits of the insurance policy, or conclusive testimonial or documentary proof of mistake in the filling out of the beneficiary form. These facts can be inferred from the totality of the circumstances in decedent's life at the time the insurance policy came into being and, in particular, from the relationships between decedent, Spinner and the Fultons.

There is no question that the parties lived as a married couple for only several months, at most, and that after September or November 1984, Spinner was the spouse of Ylynne Fulton by record only. Spinner and Ylynne did absolutely nothing in the three and one half years prior to her death that could be remotely construed as the acts of a married couple. They did not see or speak to each other, held no property together, shared no expenses, filed separate income tax returns, held none of the financial advantages or disadvantages ordinarily associated with married status, and personally conducted their lives fully and completely as separate people. Spinner conceded all these acts in testimony. Moreover, Spinner testified that he began cohabitating with another woman several months after decedent left the marital apartment, continued to do so right up until the time of decedent's death, fathered a child with the woman little more than one

year after decedent left, and that decedent knew of his new live-in mate and child.

At the same time, the weight of the testimony and evidence at trial showed that decedent maintained close and affectionate ties with the Fultons, that she previously designated her mother as beneficiary for other employment-related life insurance, that the Fultons were, in every real sense, decedent's next of kin. There is no need to tarry over whether these facts have been proven with clear and convincing evidence. They are admitted by uncontroverted testimony, much of it from Spinner. The only question is whether the totality of these uncontroverted facts permit the court to infer that the failure to designate a beneficiary was the result of mistake. Given the relationships between the parties, the court can infer that the decedent's failure to designate one or both of her parents as the beneficiary under her new employer's policy was the result of mistake, through inattention. The court, however, need not rely only upon the evidence of the relationships. The inference of mistake through inattention is bolstered by other uncontroverted facts elicited at trial. Ylynne Fulton had moved several times after leaving decedent in 1984 and held several different jobs. Three months prior to her death, she had begun a new job, which required frequent long-distance traveling, and which provided the insurance policy at issue here. That there was a degree of upheaval and disruption in decedent's life prior to her death is manifest. When those facts are considered along with the state of decedent's relationships at the time the insurance policy came into being, inattention or mistake in regard to the beneficiary form is more than probable.

Finally, the generally understood purpose of life insurance, as compensation for loss to a party having an expectation of pecuniary or personal benefit in the continued life of the deceased, *see Aetna Life Ins. Co. v. Messier*, 173 F.Supp. 90, 94 (M.D.Pa.1959), provides further support for the finding that Spinner would be unjustly enriched by receiving the proceeds of the life insurance policy. The facts show that Spinner had no expectation of pecuniary or personal benefit in the continued life of decedent. The same facts show that Ylynne Fulton did not designate a beneficiary on the beneficiary form and that, had she been attentive to it, she would not have designated Spinner. Spinner would be unjustly enriched by receiving the disputed insurance proceeds. Thus, equity should intervene to prevent the estranged spouse from obtaining the proceeds by virtue of the default provision.

It is important to note significant facts that do *not* appear in this case. This case does not involve the affirmative designation of a beneficiary, or the change of a long-standing beneficiary, or a promise to maintain a particular person as a beneficiary so as to create a quasi-contract issue, or a lengthy marriage with children to whom a duty to maintain life insurance is owing by court order, or federal statutory conflict with state insurance laws, or any of the factual circumstances present in the cases cited by the parties in their briefs. Were those facts present, a different analysis might well be warranted. The instant facts, however, simply require the court to decide whether a completely and long-estranged spouse would be unjustly enriched by receiving life insurance benefits under a default clause in a life insurance policy, when that policy did not come into existence until over three years after the parties separated and last saw each other, and when the next party in line for the benefits would be the parents, with whom the deceased was very close. The facts in this particular case demand equity to intervene and impose a constructive trust against Spinner in favor of the Fultons. An appropriate order will be entered.