603 A.2d 214

**Richard D. CIAVARRO and Beverly L. Ciavarro, his wife**

**v.**

**COST CONTROL MARKETING AND MANAGEMENT, INC., Handcrafted Homes, Inc. t/a Preferred Builders, Preferred Builders, Inc.**

**Appeal of COST CONTROL MARKETING AND MANAGEMENT, INC.**

Superior Court of Pennsylvania.

Argued June 19, 1991.

Decided Feb. 5, 1992.

274

Marshall E. Anders, Stroudsburg, for appellant.

James V. Fareri, Stroudsburg, for Ciavarro, appellees.

C. Rodriguez, Stroudsburg, for Handcrafted Homes, appellee.

Domenic P. Sbrocchi, Bangor, for Preferred Homes, appellee.

Before ROWLEY, President Judge, CAVANAUGH and WIEAND, JJ.

WIEAND, Judge:

This is an appeal from a decree in equity which permitted rescission of a real estate transaction by the buyers. After careful review, we affirm.

Our standard of review in equity matters is narrow. We will reverse only when the chancellor has committed an error of law or has abused his or her discretion. See: *Sack v. Feinman*, 489 Pa. 152, 165–166, 413 A.2d 1059, 1066 (1980); *Roberson v. Davis*, 397 Pa.Super. 292, 295, 580 A.2d 39, 40 (1990); *Hostetter v. Hoover*, 378 Pa.Super. 1, 6, 547 A.2d 1247, 1249–1250 (1988), *allocatur denied*, 523 Pa. 642, 565 A.2d 1167 (1989). The chancellor is the ultimate fact finder. *Roberson v. Davis, supra* 397 Pa.Super. at 295, 580 A.2d at 40. His or her findings "will not be disturbed unless they are unsupported by competent evidence or are demonstrably capricious." *Id.* at 295, 580 A.2d at 40. See also: *Felmlee v. Lockett*, 466 Pa. 1, 7, 351 A.2d 273, 276 (1976).

On or about October 12, 1987, Richard and Beverly Ciavarro, husband and wife, visited "Pocono Model Village World" in Coolbaugh Township, Monroe County. Pocono

Model Village World was being developed by Cost Control Marketing and Management, Inc. (Cost Control). It shared office space with Preferred Builders, Inc. (Preferred), which was building homes on lots sold by Cost Control. At this joint office, the Ciavarros met Martha Decker and told her they wished to purchase a home in the Poconos. They explained that they did not wish to purchase a lot separately but wanted a single transaction involving a lot improved by the construction of a home. Decker showed the Ciavarros several model homes and introduced them to a representative of Preferred Builders to discuss the construction of a home.[1]

On the same day, the Ciavarros executed a standard written agreement to purchase a tract of land from Cost Control for a price of thirty-five thousand ($35,000.00) dollars. Of this total amount, they were to make a down payment of $8,750.00.[2] The balance was to be financed by a purchase money mortgage, which the Ciavarros signed the same day in favor of Cost Control. They also signed a collateral note and accepted notice of an assignment of the loan to Northeastern Bank of Pennsylvania.

On October 26, 1987, in response to repeated calls by Richard Ciavarro, Martha Decker prepared and the buyers and seller executed a supplemental document which they entitled "Letter of Memorandum." It provided as follows:

Letter of Memorandum between Richard D. Ciavarro and Beverly L. Ciavarro (buyers), and Pocono Model Village World (sellers).

The Seller agrees that if buyers are unable to secure a construction loan based on their prevailing income and credit status that all monies made as a deposit on homesite K–039 A Pocono Country Place will be refunded.

1. Decker's employment is not entirely clear. Although apparently an employee of Cost Control, she received commissions from both the developer and Preferred Builders.

2. The Ciavarros paid the sum of $9,450.00 to Martha Decker on October 31, 1987.

The Buyer agrees to make a minimum down payment of 35% plus closing costs on the total house and land package, provide all necessary information required by the lender and that the amount of the mortgage applied for will not exceed the prevailing income to debt standards of the lenders.

A deed for Lot # 39, Section K, as shown on the plan of a Pocono Country Place, was subsequently executed. The deed contains a date of November 13, 1987, but the same was not recorded until June 24, 1988.[3]

On November 14, 1987, the Ciavarros contracted with Preferred Builders for the construction of a home on their lot. The contract price was sixty thousand, seven hundred ($60,700.00) dollars. On the same day, they signed a worksheet evidencing that an application would be made on their behalf for a mortgage in the amount of sixty-six thousand, nine hundred ninety ($66,990.00) dollars, repayable in thirty (30) years at a fixed rate of interest. A mortgage application was submitted to Citicorp Mortgage, Inc., which rejected it on March 9, 1988.

On May 27, 1988, the Ciavarros notified Martha Decker that they wanted their money returned because of the rejection of their mortgage application. Cost Control refused. The Ciavarros then employed counsel, who made a formal demand for rescission on July 12, 1988. On July 26, 1988, First Lenders Mortgage Services notified the Ciavarros that they had been approved for mortgage financing in the amount of sixty thousand ($60,000.00) dollars, payable in thirty (30) years, at a variable rate of interest. This mortgage commitment represented less than sixty-three (63%) percent of the total cost of the land and building.

The Ciavarros then commenced an action in equity against Cost Control and Preferred Builders to rescind all transactions involving the Pocono real estate. Prior to trial, their claim against Preferred Builders was settled, and the

3. The trial court's finding that the deed had not been recorded is contrary to the evidence. The Recorder of Deeds entered the deed at 2:33 p.m. on June 24, 1988.

action against it was discontinued. A trial ensued against Cost Control in which the court heard evidence from which the Ciavarros contended that they had been defrauded. The trial court made no findings regarding the claim of fraud and held that the Ciavarros had a right to rescind under the terms of their agreement because of their inability to obtain the required mortgage financing within a reasonable time. Therefore, the court directed Cost Control to repay the sum of $14,321.43, plus interest, and directed the Ciavarros to execute and deliver a deed for Lot 39, Section K, on Plan of a Pocono Country Place.

On appeal, Cost Control argues that (1) the supplemental agreement lacked consideration and (2) all agreements merged in the deed for the tract purchased by the Ciavarros. We reject these arguments for the following reasons.

■ The trial court found that the supplemental agreement between the parties was "in furtherance of the parties' original agreement that the land purchase and home construction would be financed as one transaction." When the original documents were prepared, Martha Decker used a standard form of agreement. This was ill-equipped to reflect the parties' agreement, and she failed to modify it to state correctly that agreement. When Ciavarro repeatedly called Decker about this, she prepared a supplemental agreement which attempted to state the parties' actual agreement.

Under these circumstances, the supplemental agreement was supported by sufficient consideration. "While it is true that the performance of an act which one party is legally bound to render to the other party is not legal consideration ... this rule is subject to an exception where the very existence of the duty is the subject of honest and reasonable dispute." *Blaisdell Filtration Co. v. Bayard & Co., Inc.*, 311 Pa. 6, 9, 166 A. 234, 235 (1933). See also: Restatement (Second) of Contracts § 74. Compare: *Crown v. Cole*, 211 Pa.Super. 388, 236 A.2d 532 (1967). In the instant case, where there was a good faith dispute about the terms of the parties' agreement, that dispute was sufficient considera-

tion for a supplemental agreement which modified the parties' initial draft by adding a condition which was necessary to conform the agreement to the parties' initial intent.

■ Appellants' argument that the supplemental agreement merged in the deed must also fail.[4]

The general rule is that preliminary agreements and understandings relating to the sale of land become merged in the deed; this rule, however, does not apply to independent convenants [sic] or provisions in an agreement of sale not intended by the parties to be incorporated in the deed. In such case the delivery of the conveyance is merely a part performance of the contract, which remains binding as to its further provisions: *Seldon [Selden] v. Williams*, 9 Watts 9; *Walker v. France*, 112 Pa. 203 [5 A. 208]; *Close v. Zell*, 141 Pa. 390 [21 A. 770].

*Caveny v. Curtis*, 257 Pa. 575, 581, 101 A. 853, 854 (1917). The covenant in the instant case made reference to a construction loan and permitted the buyers to rescind in the event an appropriate loan could not be obtained. This covenant, by its express terms, was independent of the purchase of the lot. As such, it was not subsumed by appellant-seller's decision to record the deed after receiving notice of the buyers' intent to rescind.

The trial court found that a period of six months was a reasonable period within which to expect a response with respect to the buyers' eligibility for a construction loan. We have no basis for disputing this finding; and, therefore, we accept it. After the expiration of that period, the Ciavarros could properly exercise their contractual right to rescind the transaction.

■ Appellant also contends that the buyers' "bank worksheet," on which were stated the terms of the loan for which application was to be made, was parol evidence and should not have been received to alter the terms of the

4. The evidence was that an executed deed had not been delivered to the buyers until after they attempted to rescind because of the inability to obtain a mortgage. After a demand for rescission had been made, the seller then caused the deed to be recorded.

rescission clause. However, the supplemental agreement between the parties was incomplete; it did not contain the terms of the construction loan contemplated by the parties. Therefore, the "bank worksheet," which contained the terms of the loan to be obtained, was properly received to aid the trial court in ascertaining the intent of the parties. See: *In re Estate of Hall*, 517 Pa. 115, 133, 535 A.2d 47, 55 (1987); *CBS, Inc. v. Capital Cities Communications, Inc.*, 301 Pa.Super. 557, 570, 448 A.2d 48, 54 (1982). The trial court did not err when it found that even the delayed commitment by First Lenders Mortgage Services had failed to meet the mortgage commitment contemplated by the appellee-buyers and the appellant-seller.

The evidence in this case is clear. The buyers were people of limited means. They wanted to buy a vacation home in the Poconos and not merely a lot on which they could build at some unascertained future time. When it became apparent that the necessary mortgage to complete the transaction would not be forthcoming, they sought to rescind the transaction and recover the moneys already paid. This attempted rescission was resisted by the appellant-seller, which acted to protect its sale of the lot to the buyers. The trial court, which heard the evidence, rejected the seller's defense and allowed the buyers to rescind. Although the facts were clouded by the seller's handling of the transaction, we conclude that the trial court's decision should not be disturbed. It is, therefore,

Affirmed.