### In re FORMAN ENTERPRISES, INC., Debtor.

### The Official Committee of Unsecured Creditors of Forman Enterprises, Inc., Plaintiff,

v.

### Sam Forman, Lawrence Ashinoff, Brett Forman, Richard Forman, and Wendy Forman, Defendants.

### Bankruptcy No. 00–20523–BM. Adversary No. 00–2683–BM.

United States Bankruptcy Court, W.D. Pennsylvania.

Aug. 2, 2002.

---

Owen W. Katz, and Roman Iwanyshyn, Pittsburgh, PA, Co–Counsel for Carlota M. Böhm.

Carlotta M. Böhm, Houston Harbaugh, P.C., Pittsburgh, PA, Chapter 7 Trustee, Successor Plaintiff.

James L. Weisman, Samuel F. Reynolds, Jr., Weisman, Goldman, Bowen & Gross, LLP, Pittsburgh, PA, for Forman Defendants.

Philip E. Beard, N. Beaumont Beard, Stonecipher, Cunningham, Beard & Schmitt, P.C., Pittsburgh, PA, for Lawrence Ashinoff.

## MEMORANDUM OPINION

BERNARD MARKOVITZ, Bankruptcy Judge.

The chapter 7 trustee seeks in this adversary action to recover tax refunds defendants as shareholders of an S corporation have received (or expect to receive) as a result of their carrying back a net operating loss (hereinafter "NOL") suffered by the S corporation to income taxes paid in previous years. Recovery is based on theories of unjust enrichment, breach of fiduciary duty and impermissible post-petition transfer. The trustee also seeks imposition of a constructive trust.

Defendants steadfastly deny that the chapter 7 trustee is entitled to any relief in this case.

We will enter judgment in favor of defendants and against the chapter 7 trustee for reasons set forth in this memorandum opinion.

## FACTS

Debtor was incorporated by defendant Sam Forman on October 4, 1995. The next day it issued 1,000 shares of common stock, all of which were acquired by Sam Forman. At the time of the closing Sam Forman paid in capital to the debtor in the amount of $1,000,000 and loaned it the additional sum of $4,190,000.

Immediately thereafter debtor elected to become an S corporation in accordance with 26 U.S.C. § 1361 et seq., which election remained in effect through its tax year ending on January 4, 2000.

On February 19, 1996, Sam Forman sold thirty percent of his shares of stock to defendant Larry Ashinoff for the sum of $993,000 and sold him a thirty percent interest in the above note for the sum of $1,257,000.

Sam Forman and Larry Ashinoff executed a shareholder's agreement at the time Ashinoff acquired his shares of debtor's stock. Section 9.01 of the agreement provided in part as follows:

> .... Commencing with tax-year 1996 and for each year thereafter for which the [debtor] is an S corporation for federal income tax purposes, the [debtor] shall pay a dividend to each of the stockholders to allow such stockholder to pay the federal and state income tax or tax estimates payable by such stockholders attributable to such stockholders' allocable share of the [debtor's] income computed for such year.

At some time after February 19, 1996, Sam Forman gave a portion of his remaining shares of stock as a gift to his children, defendants Brett Forman, Wendy Forman and Richard Forman. Sam Forman owned fifty percent of debtor's shares as a result of the gift whereas Larry Ashinoff owned thirty percent, Brett Forman and Wendy Forman each owned nine percent; and Richard Forman owned two percent.

Sam Forman, Brett Forman and Larry Ashinoff were members of director's board of directors at all times relevant to this case.

Sam Forman received dividend payments from debtor in April and June of 1996 totaling $550,000 to pay income tax he owed for 1995 on debtor's taxable income.

Defendants received dividend payments from debtor in January of 1997 totaling $850,001 to pay income taxes they owed for 1996 on debtor's taxable income.

Defendants received dividend payments from debtor in January and June of 1998 totaling $1,311,750 to pay income taxes they owed for 1997 on debtor's taxable income.

Defendants received dividend payments in June and September of 1998 and in January and April of 1999 totaling $721,038 to pay income taxes they owed for 1998 on debtor's taxable income.

Defendants received dividend payments in April and June of 1999 totaling $1,065,220 to pay income taxes they owed for 1999 on debtor's taxable income.

All of these dividend payments to defendants were made in accordance with § 9.01 of the above shareholders' agreement executed on February 19, 1996.

Debtor's CFO projected in September of 1999 that debtor would suffer a loss of $1,000,000 to $1,500,000 for 1999. He recommended that each shareholder execute a promissory note evidencing repayment of his or her pro rata dividend for 1999 by December 31, 1999.

All four of the Forman defendants agreed to repay dividends they had received from debtor in 1999 to pay income taxes they owed for 1999 on debtor's taxable income. To this end, they executed promissory notes in favor of debtor which were then assigned to PNC Bank, debtor's secured lender.

Defendant Ashinoff, however, refused to repay the dividends he had received from debtor in 1999 to pay income tax he owed in 1999 on debtor's taxable income. Without his consent, debtor carried on its books as an account receivable the dividends paid to Ashinoff in 1999 for his estimated 1999 income tax payment. Debtor then as-

signed the account receivable to PNC Bank.

Debtor filed its federal income tax return for taxable year 1999 in July of 2000. It reported an NOL in the amount of $16,695,074, some fifteen to sixteen million dollars greater than it had projected in September of 1999.

Defendants thereafter filed their personal income tax returns for taxable year 1999. As shareholders of an S corporation, they availed themselves of debtor's NOL and carried it back to taxable years 1998 and 1997 seeking to recover tax refunds for those years exceeding $5,289,000 in the aggregate. Defendants either have received or are awaiting receipt of tax refunds as a result of debtor's 1999 NOL.

Debtor filed a voluntary chapter 11 petition on January 26, 2000. A creditors' committee was constituted several days later. Many and various activities occurred during the period when debtor languished in chapter 11. None of said activities appeared to direct debtor toward reorganization. To the contrary, debtor's assets were sold, leaving debtor a base shell and the proceeds were paid to the secured creditor and the professionals. When the tangible assets and possibility of reorganization were gone, the case was converted to a chapter 7 proceeding and was reassigned to this member of the court on June 6, 2001. A chapter 7 trustee was appointed the same day.

On December 21, 2001, while debtor's bankruptcy was still a chapter 11 proceeding, the committee of unsecured creditors commenced the above adversary action against defendants seeking to recover the above tax benefits and refunds received by defendants arising out of debtor's 1999 NOL. The chapter 7 trustee stepped into the shoes of the committee and took over

prosecution of the adversary action after conversion of the case.

Count I of the complaint states a claim for unjust enrichment and requests that defendants be required to pay over any tax refunds they receive as a result of utilizing the 1999 NOL. Count II seeks imposition of a constructive trust in favor of debtor for any refunds defendants receive as a result of utilizing the NOL. Count III asserts that defendants' election not to waive loss carrybacks arising from the NOL and to utilize it instead to offset debtor's taxable income in future years constitutes an avoidable post-petition transfer under § 549(a) of the Bankruptcy Code. Count V seeks pursuant to § 550 to recover for the benefit of creditors the full amount of the refunds received by defendants.[1] Count VI asserts that defendants breached their fiduciary duty to debtor and its creditors by causing debtor to pay them dividends then utilizing the NOL to obtain tax refunds for themselves. Plaintiff seeks to recover the tax refunds received.

The case was tried on May 22, 2002, at which time the parties were given an opportunity to offer evidence on the issues raised.

## DISCUSSION

### *Federal Preemption*

On October 5, 1995, debtor elected in accordance with 26 U.S.C. § 1362(a) to be an S corporation. In its simplest terms, this means that the tax attributes of the corporation pass through to the shareholders. If the corporation earns a profit in a particular year the shareholders may elect to take same, pay the tax and keep the balance. If the corporation sustains a loss, the shareholders may utilize same by offsetting other income and reducing their tax due. In the case at hand, these share-holders elected not to generally take profits as they accrued but, instead, decided to only take a sum sufficient to pay the tax due and leave the balance of the profits earned in the corporation as a capital infusion.

The election remained in effect until it was terminated in January of 2000. Once the election was made, responsibility for payment of taxes owed on debtor's income and the right to utilize its NOLs passed through to debtor's shareholders based on each shareholder's *pro rata* share of debtor. 26 U.S.C. § 1366(a)(1)(A).

An NOL from a given taxable year can be carried back to each of the two taxable years preceding the loss 26 U.S.C. § 172(b)(1)(A)(I). The entire amount of the NOL for any taxable year is first carried back to the earlier of these taxable years. The portion of the loss which is carried back to the other taxable year is the excess, if any, of the amount of the loss over the sum of the taxable income for the prior taxable year to which it may be carried. 26 U.S.C. § 172(b)(2). A taxpayer entitled to a carryback period under § 172(a) may elect to relinquish the entire carryback period with respect to an NOL for a taxable year. The relinquishment, once it is made, is irrevocable. 172(b)(3).

The chapter 7 trustee does not dispute that defendants complied with the requirements of the Internal Revenue Code in carrying back the NOL to prior taxable years to obtain refunds of income taxes paid for those years. She also concedes that they are entitled to refunds under the Internal Revenue Code. The chapter 7 trustee instead seeks to recover the refunds from defendants for the bankruptcy estate by asserting various state law causes of action.

---

1. The complaint has no Count IV.

Defendants preliminarily maintain that the chapter 7 trustee's state law causes of action for unjust enrichment and breach of fiduciary duty are preempted by federal law, in this instance the Internal Revenue Code. They assert that their right to receive refunds under the Internal Revenue Code "trumps" such state law causes of action, which consequently cannot be used to deprive them of rights granted under federal law. Congress, in other words, "left no room" for state law to intervene.[2]

■ There are three varieties of federal preemption: (1) express preemption, (2) field preemption (also known as implied preemption); and (3) conflict preemption. *Green v. Fund Asset Management, L.P.*, 245 F.3d 214, 222 (3d Cir.2001).

■ Preemption is express when a federal statute explicitly provides that state law is displaced. *Id.* A prime example is ERISA, which expressly provides at 29 U.S.C. § 1144(a) that it "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan". *See Orson, Inc. v. Miramax Film Corp.*, 189 F.3d 377, 381 (3d Cir.1999), *cert denied,* 529 U.S. 1012, 120 S.Ct. 1286, 146 L.Ed.2d 232 (2000).

■ Field preemption occurs when "federal law so thoroughly occupies a legislative field as to make reasonable the inference that Congress no room for the States to supplement it". *Id.* (citing *Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 516, 112 S.Ct. 2608, 120 L.Ed.2d 407 (1992)).

■ Conflict preemption applies if state law presents a conflict with federal law when: (1) it is impossible to comply with both state law and federal law; or (2) the state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress". *Orson,* 189 F.3d at 382.

These categories of federal preemption are not necessarily exclusive of one another. Field preemption may be understood as a species of conflict preemption. *Orson,* 189 F.3d at 382.

■ The party claiming that federal preemption applies has the burden of proof on the issue. *Green,* 245 F.3d at 230.

■ Defendants have not indicated which of these categories of preemption displaces the trustee's state law causes of action for unjust enrichment and breach of fiduciary duty. After giving the matter due consideration, we conclude that none of them applies to this case.

Express preemption does not apply here. We know of no provision of the Internal Revenue Code which states that it supersedes any state law cause of action which may require a taxpayer to turn over to a third party a refund to which the taxpayer is entitled under the Internal Revenue Code.

The chapter 7 trustee, we have noted, does not contend that defendants are not entitled under the Internal Revenue Code to use the 1999 NOL to receive refunds of income taxes they paid in previous years. She instead asserts that defendants should not be permitted to *retain* the refunds for themselves but instead should be required to turn them over to the trustee for distribution to debtor's creditors.

When viewed in this context, it also becomes apparent that neither field preemption nor conflict preemption applies in this instance. As they are employed by the

---

2. Defendants do not assert that the cause of action asserted in accordance with §§ 549 and 550 of the Bankruptcy Code also is preempted by the Internal Revenue Code. We therefore will not address whether the Internal Revenue Code would "trump" the Bankruptcy Code in this regard if they are in conflict.

trustee, neither the doctrine of unjust enrichment nor that of breach of fiduciary duty supplements or conflicts with the Internal Revenue Code. They do not impose requirements that are in addition to or that conflict with the requirements set forth in the Internal Revenue Code for a shareholder in an S corporation to receive a refund based on the corporation's NOL. They are aimed at requiring defendants to turn over to the trustee the refunds to which they are entitled under the Internal Revenue Code instead of retaining them for their own use and enjoyment.

### Unjust Enrichment

The chapter 7 trustee asserts in Count I of the complaint that defendants were unjustly enriched when they used the 1999 NOL for their personal benefit to obtain refunds of income taxes they paid in previous years. This cause of action is without merit in light of the facts of this case.

The parties disagree concerning whose common law of unjust enrichment applies in deciding this claim. The chapter 7 trustee maintains that the common law of Pennsylvania, where debtor had its principal place of business, applies. Defendants maintain that the common law of Delaware, where debtor was incorporated, applies.

We need not decide this issue to resolve the claim for unjust enrichment. The outcome is the same regardless of which state's law applies: the trustee's cause of action for unjust enrichment fails.

▉▉▉ Unjust enrichment is a doctrine based in equity. *Mitchell v. Moore*, 729 A.2d 1200, 1203 (Pa.Super.), *appeal denied*, 561 Pa. 698, 751 A.2d 192 (2000). Where it applies, the law implies a contract—often referred to as a quasi-contract—which requires a party who is unjustly enriched to make restitution *in quantum meruit*. *Schenck v. K.E. David, Ltd.*, 446 Pa.Super.

94, 97, 666 A.2d 327, 328 (1995), *appeal denied*, 544 Pa. 660, 676 A.2d 1200 (1996). To prevail on a claim for unjust enrichment, one must demonstrate that the party from whom restitution is sought either procured or received a benefit, the retention of which would be unconscionable. *Torchia on Behalf of Torchia v. Torchia*, 346 Pa.Super. 229, 233, 499 A.2d 581, 582 (1985).

▉▉▉ The requirements under Pennsylvania law for establishing unjust enrichment are: (1) that a benefit was conferred on defendant; (2) that defendant retained the benefit; and (3) that it would be inequitable for defendant to retain the benefit without paying its value. *Schenck*, 446 Pa.Super. at 97, 666 A.2d at 328. A showing of wrongful intent on defendant's part is not required. The focus instead is on whether defendant was unjustly enriched. *Torchia*, 346 Pa.Super. at 233, 499 A.2d at 581–82.

▉▉▉ Unjust enrichment under Delaware law requires: (1) an enrichment; (2) an impoverishment; (3) a relation between the enrichment and the impoverishment; (4) the absence of justification; and (5) the absence of a remedy provided by law. *Jackson National Life Insurance Co. v. Kennedy*, 741 A.2d 377, 393 (Del.Ch.1999).

▉▉▉ Regardless of which state's law applies here, the chapter 7 trustee would have to demonstrate that it would be *inequitable* for defendants to retain the tax refunds for themselves (Pennsylvania law) or that there is *no justification* for them to do so (Delaware law).

In our estimation, it would not be inequitable or unjustifiable for defendants to retain for themselves the tax refunds arising out of their utilization of the 1999 NOL suffered by debtor. Although it is disconcerting that the secured creditor—i.e.,

PNC—, who would be entitled to any proceeds of the cause of action will not be permitted to utilize the NOL and the tax refund to further reduce its claim while debtor's shareholders will reap the benefit of the tax refunds, this, standing alone does not suffice to incite equity to take measures it deems necessary to rectify this inequity.

The chapter 7 trustee's theory of the case, especially the cause of action for unjust enrichment, is predicated on the proposition that *debtor*, not defendants, paid defendants' income taxes while *defendants* retained the tax refunds. Were this characterization accurate, we might be inclined to agree with the trustee that it would be inequitable or unjustifiable, and that defendants would be unjustly enriched, if they were to retain the tax refunds for themselves when debtor had paid the income taxes they owed.

Looking at the issue from a different perspective, it is clear that if the shareholders had a tax liability for the tax years, 1995, 1996, 1997, and 1998, that the corporation earned a profit during that period. Rather than taking all of the profit and utilizing a portion of same to pay the tax, the shareholders merely took a sum sufficient to pay the tax and left the balance in the corporation as a capital infusion. Greedy insiders having no concern for creditors might not have elected this option. These shareholders did so elect

We reject the chapter 7 trustee's "spin" concerning who paid defendants' income taxes in the first place. As we see it, defendants, not debtor, paid the income taxes defendants owed as shareholders of an S corporation.

In accordance with § 9.01 of the shareholders' agreement, debtor merely paid a dividend from its income to each shareholder so the shareholder could pay income tax he or she owed that was attributable to the shareholder's allocable share of debtor's income. When viewed in this light, without something more it would *not* be inequitable or unjustifiable for defendants to retain for themselves a refund of income taxes they themselves paid from dividends from income they had received as shareholders of an S corporation.

The trustee offered no evidence showing that this arrangement between debtor and defendants was "done on the sly" or that it was an artifice devised by defendants to benefit themselves and to deprive debtor's creditors should debtor become insolvent. It instead was done so defendants could lawfully avail themselves of the tax benefits provided by the Internal Revenue Code concerning S corporations. We consequently see no basis for "looking behind the scene" to ascertain what "truly" transpired.

It is a *non sequitur* to conclude that a S corporation paid the tax owed by its shareholder on the corporation's income merely because the S corporation paid a dividend to the shareholder to enable the shareholder to pay the tax owed by the shareholder on the S corporation's income and the shareholder utilized the dividend to pay the tax owed. As a matter of logic this conclusion does not follow.

We acknowledge that a court of equity has powers not possessed by a court of law. Its powers, however, are not without limits. One of these limitations is logic. A court of equity cannot blithely disregard the principles of logic concerning what follows from what any more than a court of law can.

We conclude in light of the foregoing that the chapter 7 trustee has failed to demonstrate that defendants would be unjustly enriched if they retained the tax refunds for themselves and did not turn

them over to the chapter 7 trustee for distribution to debtor's creditors.

## Breach of Fiduciary Duty

The chapter 7 trustee also asserts that defendants breached the fiduciary duty they owed to debtor and its creditors by retaining for themselves the tax refunds instead of making them available for distribution to debtor's creditors.

■ A director of a corporation stands in a fiduciary relationship to the corporation and is obligated to perform his or her duties in good faith and in a manner reasonably believed to be in the best interest of the corporation. The director must utilize such care, skill and diligence as would a person of ordinary intelligence under similar circumstances. 15 Pa.C.S.A. § 512(a).

■ The duty owed by a director arising under § 512(a) generally is owed solely to the corporation and may be enforced directly by the corporation or indirectly by a shareholder in a shareholder derivative action brought under the right of the corporation. The duty may not be enforced directly by a shareholder, by another director, or by any other person or group. 15 Pa.C.S.A. § 517.

■ There are, however, exceptions to these general principles. Where a corporation is insolvent, for instance, its directors hold their powers "in trust" for creditors of the corporation. *Bernstein v. Donaldson (In re Insulfoams, Inc.)*, 184 B.R. 694, 703–04 (Bankr.W.D.Pa.1995), *aff'd*, 104 F.3d 547 (3d Cir.1997). Under such circumstances bankruptcy trustee may bring an action on behalf of creditors seeking to recover for breach of fiduciary duty. *Id.*

■ The test for liability for breach of fiduciary duty is whether a director was unjustly enriched by his or her actions

*Seaboard Industries v. Monaco*, 442 Pa. 256, 262, 276 A.2d 305, 309 (1971); *also Bailey v. Jacobs*, 325 Pa. 187, 194, 189 A. 320, 324 (1937).

■ The chapter 7 trustee's cause of action for breach of fiduciary duty must fail because we have determined that unjust enrichment will not result if defendants are permitted to retain the tax refunds for themselves instead of paying them over to the chapter 7 trustee for distribution to debtor's creditors.

## Constructive Trust

The chapter 7 trustee seeks to have a constructive trust imposed in favor of debtor's creditors with respect to the tax refunds defendants have received as a result of carrying back the 1999 NOL to previous taxable years.

■ A constructive trust arises when a person holding title to property is subject to an equitable duty to convey it to another on the theory that he would be *unjustly enriched* if allowed to retain it for his own benefit. *Yohe v. Yohe*, 466 Pa. 405, 411, 353 A.2d 417, 420 (1976).

■ The necessity for such a trust may arise from circumstances evidencing fraud, duress, undue influence, or mistake. *Id.* The controlling factor in determining whether a constructive trust ought to be imposed is whether it is necessary to prevent unjust enrichment. *Roberson v. Davis*, 397 Pa.Super. 292, 296, 580 A.2d 39, 41 (1990).

■ A heavy burden lies with one who seeks to have a constructive trust imposed. The evidence must be "clear, direct, precise and convincing". *Masgai v. Masgai*, 460 Pa. 453, 460, 333 A.2d 861, 865 (1975). Equity "should not convert absolute ownership into an estate of lesser quality" unless evidence in support of a

constructive trust "is of the highest probative value". *Id.*

The trustee's request for a constructive trust in this case will be denied. The sole basis offered by the trustee for a constructive trust is the alleged unjust enrichment that would result if defendants were permitted to retain the above tax refunds for their own benefit and enjoyment. We have determined that unjust enrichment will not result if defendants are permitted to retain the tax refunds. As a consequence, there is no need to impose a constructive trust in this case.

### *Avoidable Post–Petition Transfer*

Finally, the chapter 7 trustee asserts that defendants' election not to waive loss carrybacks arising from the NOL and to use it instead to offset debtor's taxable income for future years amounts to a voidable post-petition transfer for purposes of § 549(a) of the Bankruptcy Code. She seeks in accordance with § 550(a) to recover for the benefit of creditors the value of the alleged post-petition transfer.

With exceptions not relevant here, a chapter 7 trustee may avoid: (1) a transfer; (2) of property of the bankruptcy estate; (3) that occurs after the commencement of the bankruptcy case; and (4) that was not authorized by any provision of the Bankruptcy Code or by order of the bankruptcy court. *See* 11 U.S.C. § 549(a).

The third and fourth of these requirements are not at issue here. If a post-petition transfer of property of the bankruptcy estate occurred, it was not authorized by any provision of the Bankruptcy Code or by an order of the bankruptcy court. To prevail in this case, the chapter 7 trustee must demonstrate that a transfer of property of the bankruptcy estate occurred when defendants purportedly elected not to waive the loss carrybacks arising from the NOL and to use them instead to offset against debtor's income for future taxable years.

A bankruptcy estate consisting of debtor's property is created at the commencement of the case. 11 U.S.C. § 541. Property of the estate includes, among other things, "all legal and equitable interests of the debtor in property as of the commencement of the case". 11 U.S.C. § 541(a). The terms "property of debtor" and "interests of the debtor in property" are co-extensive for purposes of § 541(a)(1). *Begier v. IRS,* 496 U.S. 53, 59 n. 3, 110 S.Ct. 2258, 2263 n. 3, 110 L.Ed.2d 46 (1990).

The legislative history of § 541(a) indicates that it is expansive and includes "all kinds of property, including tangible or intangible property, causes of action ... and all other forms of property specified in section 70(a) of the Bankruptcy Act." *U.S. v. Whiting Pools,* 462 U.S. 198, 205 n. 9, 103 S.Ct. 2309, 76 L.Ed.2d 515 (1983). Although it is expansive, the concept is not without limit. *Westmoreland Human Opportunities, Inc. v. Walsh,* 246 F.3d 233, 243 (3d Cir.2001)

The trustee asserts that the NOL and debtor's right to use it are property of its bankruptcy estate. As support for this proposition the trustee relies upon: *Official Committee of Unsecured Creditors v. PSS Steamship Co., Inc. (In re Prudential Lines, Inc.),* 928 F.2d 565, 569–71 (2d Cir.), *cert denied,* 502 U.S. 821, 112 S.Ct. 82, 116 L.Ed.2d 55 (1991); *Gibson v. U.S. (In re Russell),* 927 F.2d 413, 417–18 (8th Cir. 1991); *Parker v. Saunders (In re Bakersfield Westar, Inc.),* 226 B.R. 227, 233–34 (9th Cir. BAP 1998); and *Guinn v. Lines (In re Trans–Lines West, Inc.),* 203 B.R. 653, 661–62 (Bankr.E.D.Tenn.1996).

Reliance upon these cases is misplaced. None of them asserts that, in the case of

an S corporation, a debtor's NOL and the right to use it are property of the debtor's bankruptcy estate. Each case is readily distinguishable from the present case and sheds no light on the issue presently before us.

Although *Prudential Lines* and *Russell* held that an NOL and the right to use it were property of the debtor's bankruptcy estate, the debtors therein were not S corporations. The debtor in *Prudential Lines* was a C corporation rather than an S corporation. The debtor in *Russell* was an individual rather than a corporation. When the C corporation and/or the individuals filed for bankruptcy, the estate created contained all of their assets. Included therein were their tax attributes, including NOLs.

When this debtor filed, its estate did not contain this asset, as years previous the tax attributes were transferred to the shareholders. Surely transferring this asset from the shareholders to the debtor would in fact be a transfer. Refusing to transfer an asset not owned by the estate to the estate can hardly be termed a transfer. The logic is tortured. .

*Bakersfield Westar* and *Trans–Lines West* held that the right to revoke one's S corporation status was property of the debtor corporation's bankruptcy estate but said nothing about whether the right to use an NOL was property of the corporate debtor's bankruptcy estate. In addition, we are reluctant to believe that a post-bankruptcy revocation of S status could, under the tax laws of the United States, be utilized to undo previously executed acts. Humpty Dumpty could not be restructured using this scenario.

▆ In the context of avoidance actions brought pursuant to the provisions of the Bankruptcy Code, it has been held that something qualifies as property of the bankruptcy estate if its transfer would de-prive the estate of something that otherwise could be utilized to satisfy the allowable claims of creditors. E.g., *In the Matter of Merchants Grain, Inc.*, 93 F.3d 1347, 1353 (7th Cir.1996), *cert denied,* 519 U.S. 1111, 117 S.Ct. 948, 136 L.Ed.2d 837 (1997); *In re Bullion Reserve of North America,* 836 F.2d 1214, 1217 (9th Cir.), *cert. denied,* 486 U.S. 1056, 108 S.Ct. 2824, 100 L.Ed.2d 925 (1988).

Applying this criterion, we conclude that the NOL and the right to use it were *not* property of debtor's bankruptcy estate. Under the provisions of the Internal Revenue Code cited previously, the NOL and the right to use it automatically passed through by operation of law to defendants as S corporation shareholders. Debtor was merely a "conduit" through which the NOL and the right to use it passed to them. *See US. v. Farley,* 202 F.3d 198, 201 n. 1 (3d Cir.2000), *cert denied,* 531 U.S. 1111, 121 S.Ct. 874, 148 L.Ed.2d 769 (2001). Any tax benefits resulting from the NOL and the right to use it inure solely to the benefit of defendants as shareholders and would not be available to satisfy claims of the corporation's creditors.

We further conclude that the requisite transfer for purposes of § 549(a) did not occur in this instance.

In the first place, it is not clear what the alleged transfer was in this case. According to the chapter 7 trustee, defendants' determination not to elect to waive loss carrybacks for the 1999 NOL and to utilize the NOL instead to offset income in future years constituted a transfer of debtor's interest in the NOL. We are not certain what to make of this tortured locution. The chapter 7 trustee apparently maintains that defendants' decision to carry the NOL back to past taxable years instead of

carrying it forward to future taxable years somehow was a "transfer". We disagree.

Under the Internal Revenue Code, an NOL is first applied to the year in which the loss occurred. Any unused portion of the NOL is next carried back to the two taxable years preceding the loss. 26 U.S.C. § 172(b)(1). The carryback can under certain circumstances be waived and instead carried forward. 26 U.S.C. § 172(b)(3).

An NOL, in other words, is first automatically carried back to prior years unless the taxpayer decides to waive the carryback and instead carries it forward to future years. We fail to comprehend how a decision by defendants not to waive the prescribed order in which an NOL is applied under the Internal Revenue Code amounts to a transfer of any kind.

Every mode of disposing of or parting with property or an interest in property, whether direct or indirect, voluntary or involuntary, absolute or conditional, qualifies as a transfer for purposes of the Bankruptcy Code. *See* 11 U.S.C. § 101(54). It follows from the previous determination that the NOL and the right to use it were not property of debtor's bankruptcy estate, that debtor did not part with an interest therein, and that no transfer for purposes of § 549 consequently occurred when defendants determined not to waive the loss carrybacks and to carry the NOL forward to future taxable years.

We conclude in light of the foregoing that, as was the case with the other causes of action asserted by the chapter 7 trustee, the cause of action based on § 549(a) of the Bankruptcy Code must fail.